## Carol N. COOPER, An Individual, Plaintiff–Appellant,

v.

## NEIMAN MARCUS GROUP, A Delaware Corporation, Susan B. Zegers, an Individual, Maria Dempsey Rebolledo, an Individual, Defendants–Appellees.

No. 96–15068.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 3, 1997.

Decided Sept. 11, 1997.

As Amended on Denial of Rehearing and Rehearing En Banc Dec. 4, 1997.

Sally Clifford Shanley, Scottsdale, AZ, for plaintiff-appellant.

David A. Selden, Julie A. Pace, Quarles & Brady, Phoenix, AZ, for defendant-appellee.

Before: REINHARDT, HALL and THOMPSON, Circuit Judges.

REINHARDT, Circuit Judge:

Carol N. Cooper appeals the grant of summary judgment in favor of defendants, including her employer Neiman Marcus Group, on her claim of constructive discharge under the Americans with Disabilities Act. We reverse.

## BACKGROUND

In 1984, Cooper began working as an Executive Secretary with Neiman Marcus at its store in Newport Beach, California. She was transferred in 1991 to the Scottsdale, Arizona store and assigned to work as a secretary for Susan Zegers and other executive staff. Although she was not given a written job description until after this dispute arose, in 1987 Cooper was asked, in a job evaluation questionnaire, to outline what she thought her job entailed. She wrote: "[s]ee that all facets of the executive office run in smooth, efficient manner—relieving executive staff and store manager in particular of routine matters. Serve as key communication post for the store, a resource for executive staff, store personnel and customers as well as Dallas."

During the summer of 1992, Cooper began having trouble speaking, which manifested itself as slurred speech. Her condition worsened from June to December and she began to notice that her speech was slurred more

often and that she was unable to enunciate clearly. She was diagnosed with dysarthria or slurred speech, but no underlying medical condition has ever been found.

The first time Neiman Marcus raised a question concerning Cooper's performance was in February 1993, when Susan Zegers, the store manager and person who had hired Cooper, discussed with her the deterioration in her speech. In early April 1993, Cooper met with Zegers and Maria Dempsey–Rebolledo, the human resources manager, who recommended that she take a thirty-day leave of absence in order to undergo speech therapy. Cooper declined their offer, stating that she wanted to continue working while she obtained the necessary therapy. All three agreed to that compromise. Neiman Marcus, however, continued to be unhappy with her speech.

Cooper underwent testing and evaluation at the Arizona State University Department of Speech and Hearing Science on April 20, 1993. Although her speech was slurred, the evaluator indicated that "she demonstrated sufficient loudness during testing procedures ... [and] receptive and expressive language skills, voice quality, and fluency were judged to be within normal limits." Cooper was diagnosed with dysarthria, but "no abnormalities of the oral mechanism" were found. Cooper was labeled a "good candidate for speech therapy" and another evaluation was ordered in six months. However, even with the prescribed therapy Cooper's speech did not improve.

Zegers and Dempsey again met with Cooper on May 25, 1993 and agreed that Cooper would continue to attend speech therapy and that she would be permitted to leave work early to do so. The notes memorializing that meeting state that no action would be taken until the end of June, at which point Cooper's progress would be evaluated to see if she was speaking at the "standard level." According to the notes, "[i]t was discussed that our expectation was that Carol needed to be able

to do the core of her job to a standard level which was verbally communicating one on one as well as answering the phone."

Beginning June 15, 1993, Zegers began documenting complaints from individuals both in and outside the store who had commented about Cooper's speech. While some of the individuals described her as sounding drunk or as if she were taking drugs, none ever complained that Cooper failed to provide all the requested information.

In response to Cooper's request for a description of her duties, Zegers and Dempsey prepared a description of her functions as executive secretary in July 1993. The description outlined a job that included extensive communication with those both in and outside the store and included tasks such as "[i]nitiate calls for Store Manager and Executives as business dictates" and "[c]ommunicate to all levels of staff within the store and within the total company." The description also stated that one of Cooper's duties was to assume responsibility for all communications by the Public Relations staff in their absence. In a deposition taken after this litigation commenced, Cooper denied that this had previously been one of her responsibilities. Moreover, Cooper states that she was less than confident in the accuracy of the job description because it was created after she made the request and did not come from the corporate headquarters.

On July 9, 1993, another meeting was held at which Zegers and Dempsey informed Cooper that her speech had failed to improve and as memorialized in a memo by Dempsey, "[b]ecause communicating is the core of [the] job and [you are] *unable to perform* this to a standard level a 90 day probation will begin." (emphasis added). Cooper was then given two options as recorded in the memorandum:

Option # 1

A 90 day probation would commence in which you opt to formally advise us that you will leave Neiman Marcus and collect full pay for the 90 day period. This allows

you to take this time to seek outside retraining or opportunities. After this 90 day period termination results, a two and a half week severance would ensue. In addition any unused vacation would be paid at this time.

Option # 2

A 90 day probation would commence in which you would continue to work and attempt to perform to a standard level in your job, specifically focusing on your communication being at a standard level, whether by phone or in person. If you did not perform to a standard level termination would result and payment of the two and a half weeks severance would ensue. In addition any unused vacation would be paid at this time.

At this meeting, Cooper asked about the possibility of applying for another position in the store that did not require significant verbal communication, such as gift wrapping. Dempsey stated that the pay would be substantially lower and that there were no positions at that time.

In a memorandum to Dempsey and Zegers dated July 22, 1993, Cooper again inquired about other opportunities in the company. She also explained that she thought she was doing her job well and that she was communicating effectively. In response to the complaints Zegers began collecting in June, Cooper suggested that perhaps some of Zegers' outside calls could be rerouted to another secretary. Cooper did not think that this would impose significant hardship on the company.

At a July 27 meeting, Zegers and Dempsey discussed Cooper's suggested job modifications with her. According to the memorandum memorializing this meeting, Dempsey explained to Cooper that because communication was the core of her job and because her "speech and verbal communication continue to be below the standard level of this position," no accommodation could be made. Cooper then agreed to take the 30–day leave of absence, originally offered her in April 1993, commencing on August 1. On August 27, she was to inform Neiman Marcus as to which option she was choosing with respect to the 90–day "probationary period".

On July 30, Cooper was given a job performance evaluation prepared by Zegers for the period covering June 1992 to May 1993. She was rated at either "meets requirements" or "exceeds requirements" in the clerical and operational components of her job. In the areas of interpersonal skills and customer service, she was rated "below requirements" and "unsatisfactory," respectively. One written comment noted that "[t]he deterioration of Carol's speech throughout this time has affected her level of enthusiasm." Zegers also stated that her communication level "has been significantly below standard due to the dramatic deterioration of Carol's speech." In a place on the form for Cooper to comment on her evaluation she wrote "I do not feel this review is a fair evaluation when I am told in conversation that the only problem area with my job performance is with speech communication—primarily on the phone." In a memorandum Cooper wrote to document a conversation that she had regarding the review with Zegers and Sue Franklin, Dempsey's assistant human resources manager, she characterized the review as "unfair and prejudicial." Cooper asked Zegers to erase some of the more offensive commentary contained within the review, which she did. Zegers did not, however, adjust the overall ratings.

At some point during the leave period, Cooper expressed an interest in working in the gift gallery. Neiman Marcus refused her request on the ground that the job required speaking skills. By this time, Cooper had hired an attorney, who sent a letter dated August 25, 1993, stating that during all the relevant periods she had continued to do her job effectively. Furthermore, he stated, she spoke in a manner that was completely understandable and she was capable of performing all of her job functions adequately. Zegers and Dempsey took the position that at that time there were no job openings available in the entire company that would be suitable for Cooper due to the levels of communication skills required.

Although Cooper believed that she was communicating effectively, she knew that her speech had not improved notwithstanding

speech therapy and that there was no evidence of any prospect for improvement. More important, she was aware that Neiman Marcus had concluded that the level at which she was able to communicate was not acceptable. In August, therefore, she decided to select Option # 1 of the two options given to her at the July 9 meeting.

Cooper then brought this action for violation of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. violation of the Arizona Civil Rights Act on the ground of discrimination on the basis of disability, intentional infliction of emotional distress; defamation by self-publication, for having to explain to prospective employers why she was terminated; and wrongful termination. ER 1. Cooper alleged that she was terminated in violation of the ADA, because she had a speech impediment, and that an attempt at reasonable accommodation had not been made.

The district court granted the defendants' motion for summary judgment on all counts. As to the ADA claim, the district judge held, that by electing to receive 90 days pay prior to termination, Cooper constructively resigned and she was therefore not discharged, constructively or otherwise. Cooper filed a motion to reconsider which was denied. She appealed the grant of summary judgment on her Americans with Disabilities Act claim.

*DISCUSSION*

The ADA prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual." 42 U.S.C. § 12112. Discrimination under the ADA is defined as "limiting, segregating, or classifying a job applicant in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such ... employee" and includes "utilizing standards, criteria, or methods of administration—(A) that have the effect of discrimination on the basis of disability...." Disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102(2)(A). Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, *speaking,* breathing, learning, and working." 29 C.F.R. § 1630.2(i) (emphasis added).

In order to prevail on a claim of unlawful discharge under the ADA, the "plaintiff must establish: (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is with or without reasonable accommodation (which he must describe), he is able to perform the essential functions of the job; and (3) that the employer terminated him because of his disability." *Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1481 (9th Cir.1996). In order to state a prima facie case under the ADA, Cooper must prove that she is a qualified individual with a disability who has been discharged because of the disability. *Sanders v. Arneson Products, Inc.,* 91 F.3d 1351, 1353 (9th Cir.1996), *cert. denied* —— U.S. ——, 117 S.Ct. 1247, 137 L.Ed.2d 329 (1997). Cooper bears the burden of demonstrating that she can perform the essential functions of her job with or without reasonable accommodation. *Kennedy,* 90 F.3d at 1481. However, because the district court based its decision entirely on its conclusion that Cooper was not discharged, it never reached any of the other questions, including whether she was a qualified individual with a disability.

In holding that no discharge occurred, the district court analogized Cooper's case to constructive discharge cases in which the plaintiff has the burden of proving that, after an examination of the "totality of the circumstances, a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working conditions." *Thomas v. Douglas,* 877 F.2d 1428, 1434 (9th Cir. 1989).

The constructive discharge line of cases is inapplicable here, because the facts and circumstances in this case are wholly dissimilar to those in such cases. Constructive discharge cases involve the imposition on an employee of intolerable work-related conditions which make it impossible for him to continue in his job and cause him to abandon it. Cooper's claim here, however, is entirely different. It is that Neiman Marcus was unwilling to permit her to continue to perform her job, because, in Neiman Marcus' view, she was unable to speak at a "standard level". No work-related conditions existed that made the job so intolerable that a rea-

sonable worker would have quit her employment. Instead, according to Cooper, Neiman Marcus made the decision to discharge her, giving her only two options regarding the manner of her departure, under either of which her termination would be effective within 90 days.

On the basis of the record before us, there is at the most a genuine issue of material fact as to whether any improvement in Cooper's speech could have occurred in the foreseeable future. More likely, it appears that the parties are in agreement that there was no possibility of any short-term change for the better. Neiman Marcus repeatedly asserted that Cooper was "unable to perform" her job and that her speech was deteriorating. Cooper did not at any point assert her speech would improve, within the time allotted by Neiman–Marcus. To the contrary, Cooper's position was that her speech, as it was, was adequate for the job she held. On the record before us, it is clear that it was the disagreement over whether her speech met a reasonable standard, permissible under the ADA, that led to her termination.

Given the evidence before us, we must assume for purposes of summary judgment that Cooper's speech would not have improved. Although her speech condition had been diagnosed as dysarthria, no underlying medical condition had been discovered and as both Cooper and Neiman Marcus were aware, Cooper's speech had not improved with therapy over the course of many months. While the two options provided Cooper may have been cast in a form that purported to offer her a choice, in actuality the choice was wholly illusory. Neither option afforded her the opportunity to remain an employee of Neiman Marcus beyond 90 days. She was for all intents and purposes terminated with 90 days notice and given only the option of continuing to work during all or a part of that brief period, or to leave immediately. Moreover, under the second option she would likely have been terminated well before the end of the option period because it required that during the option period she "perform to a standard level [or] termination would result." Neither option

allowed Cooper to keep her job past the 90 day period because, as we must assume for purposes of this appeal, she was unable to speak to the standard established by Neiman Marcus and there was no prospect that her speech would improve. Thus, whether Cooper continued working or not during the brief pre-termination period, under both options she was to be terminated no later than the end of the 90 days.

For similar reasons, the district court's alternative analogy of Cooper's case to an Age Discrimination in Employment Act (ADEA) case is also unavailing. The district court compared the choice offered Cooper to the choice aging employees are sometimes given either to stay at their jobs with the normal risks of termination for cause or a reduction in force, or to accept the employer's offer of an early retirement package. *Henn v. National Geographic Society*, 819 F.2d 824, 826 (7th Cir.), *cert. denied* 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987). *Henn* involved a company's efforts to reduce its work force through the offering of early retirement incentive packages. The employees were given the option of accepting substantial economic benefits and retiring immediately or remaining on the job for as long as they could perform the work properly. In *Henn*, the choice was real. Those who declined the benefit package would retain their jobs, subject only to the same rigors and pressures as they were subject to prior to the offer of early retirement—the same rigors and pressure to which all other employees were subject. Cooper simply was not afforded the option enjoyed by the plaintiffs in *Henn*. She was not given the choice of continuing to work indefinitely under any conditions. To the contrary, in view of the deterioration in her speech, her employment was to be terminated at the end of 90 days at the latest, whichever option she took.[1]

■ Neither the constructive discharge line of cases nor the voluntary option cases under ADEA is controlling in ADA litigation. The considerations are substantially different. While there are no cases under the ADA that address facts similar to those present here, the proper result on this appeal is

1. Under both options, Cooper would receive no more than 90 days pay, plus two and a half weeks severance allowance, and any unused va- cation. The principal difference in the options related to whether she would perform work during all, part, or none of the 90 days for which she

not difficult to discern. Under the facts, as we must view them, Cooper did not elect to resign in order to receive a benefit package any more than she resigned because the working conditions were intolerable. To the contrary, Cooper was effectively discharged by her employer because it concluded that she was unable to speak in the manner it considered necessary for the proper performance of her job. Whether the company was correct in that assessment, and whether, if so, the discharge was lawful under the ADA is not now before us. On this appeal we decide only that the district court erred as a matter of law in holding that Cooper was not discharged.

Accordingly, we reverse the grant of summary judgment in favor of Neiman Marcus and remand for further proceedings.

REVERSED and REMANDED for further proceedings consistent with this opinion.

---

would be receiving termination pay, and whether she would actually receive the full 90 days' com-

pensation. Under either option, however, Cooper's employment was effectively terminated.