**Robert BARNETT, Plaintiff–Appellant,**

v.

**U.S. AIR, INC., Defendant–Appellee.**

No. 96–16669

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 8, 1997

Filed Oct. 6, 1998

Amended Oct. 28, 1999

Robert W. Rychlik, Cupertino, California, and Richard L. Davis, Menlo Park, California, for the plaintiff-appellant.

Raymond W. Thomas and Marita T. Covarrubias, Loeb & Loeb, Los Angeles, California, for the defendant-appellee.

Before: B. FLETCHER, WIGGINS, and RYMER, Circuit Judges.

Opinion by Judge WIGGINS; Dissent by Judge B. FLETCHER.

## ORDER

The opinion filed on October 6, 1998, published at 157 F.3d 744 (9th Cir.1998), is amended as follows. The portion of the opinion (1) beginning with the first complete paragraph in the right-hand column of 157 F.3d at 750, which starts with the words "Notwithstanding the Rehabilitation Act cases," and (2) continuing to the end of Section (2)(b)(i) of the opinion, which ends near the bottom of the left-hand column of 157 F.3d at 751 with the words "within its seniority system as an accommodation of his disability," shall be deleted and replaced with the text below.

The ADA's ambiguous legislative history is of little help in determining whether seniority policies should be treated the same under the ADA and the Rehabilitation Act. On one hand, there is evidence that Congress considered seniority rights to be merely one factor in reasonable accommodation analysis under the ADA, rather than a dispositive factor. *See* S. REP. NO. 101–116, at 32 (1989) ("The collective bargaining agreement could be relevant, however, in determining whether a given accommodation is reasonable. For example, if a collective bargaining agreement reserves certain jobs for employees with a given amount of seniority, it may be considered as a factor in determining whether it is a reasonable accommodation to assign an employee with a disability without seniority to that job."); H.R. REP. NO. 101–485, pt. 2, at 63 (1990) (same language), *reprinted in* 1990 U.S.C.C.A.N. 303, 345. On the other hand, the House and Senate Reports also state that reason-able accommodation does not require "bumping" a more senior employee to create a vacancy (although if the employer chose to do so, such bumping would constitute reasonable accommodation). *See* S. REP. NO. 101–116, at 32 (1989); H.R. REP. NO. 101–485, pt. 2, at 63 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 345.

In the face of this ambiguity, we are persuaded by well-reasoned opinions from other circuits that have concluded that the ADA does not require an employer to give disabled employees preference over non-disabled employees in hiring and reassignment decisions. But this is precisely what Barnett requests. U.S. Air's seniority system is a decades-old system which controls the duty assignments, shifts, transfers, holidays, etc. of U.S. Air's approximately fourteen thousand customer service agents. Barnett does not claim that U.S. Air's policy is illegitimate and an excuse for unlawful discrimination. But Barnett does claim that U.S. Air should have left him in the mailroom position, thus excepting him from its seniority policy, because of his disability. Although many ADA cases have held that reasonable accommodation does not require exempting a disabled employee from a collectively bargained seniority system, *see, e.g., Foreman v. Babcock & Wilcox Co.,* 117 F.3d 800, 810 (5th Cir.1997); *Cochrum v. Old Ben Coal Co.,* 102 F.3d 908, 912–13 (7th Cir.1996); *Eckles v. Consolidated Rail Corp.,* 94 F.3d 1041, 1051 (7th Cir.1996) (adopting a "per se" rule that reasonable accommodation does not require "sacrificing the collectively bargained, bona fide seniority rights of other employees"); *Benson v. Northwest Airlines, Inc.,* 62 F.3d 1108, 1114 (8th Cir. 1995), Barnett argues that his case is different because U.S. Air's seniority policy is not the result of a collective bargaining agreement. We reject this argument and agree with a Fifth Circuit panel that, in dicta, found Barnett's claimed distinction to be irrelevant. In *Foreman v. Babcock Wilcox Co.,* 117 F.3d 800 (5th Cir.1997), the Fifth Circuit rejected a disabled em-

ployee's claim that the ADA required his employer to reassign him to a new position even in the face of a collectively bargained seniority provision that would prohibit the requested transfers. The Court rejected the employee's argument, making clear that its decision was not based on the special status of collective bargaining agreements.

> [E]ven if there were no CBA in place, B & W would not be obligated to accommodate Foreman by reassigning him to a new position. "[W]e do not read the ADA as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring disabled persons be given priority in hiring or reassignment over those who are not disabled. It prohibits employment discrimination against qualified individuals with disabilities, no more and no less."

*Foreman*, 117 F.3d at 810 (quoting *Daugherty v. City of El Paso*, 56 F.3d 695 (5th Cir.1995)).

We agree with the *Daugherty* court and the other circuits that have interpreted the ADA as requiring no more than equality among disabled and nondisabled employees in hiring and reassignment decisions. This principle was well articulated by a recent Seventh Circuit panel:

> While Congress enacted the ADA to establish a "level playing field" for our nation's disabled workers, it did not do so in the name of discriminating against persons free from disability. Restated, the ADA does not mandate a policy of "affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over those who are not disabled."

*Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 700 (7th Cir.1998) (quoting *Daugherty*, 56 F.3d at 700); *see also Dalton v. Subaru–Isuzu Automotive, Inc.*, 141 F.3d 667, 679 (7th Cir.1998) ("[W]e have been unable to find a single ADA or Rehabilitation Act case in which an employer has been required to reassign a disabled

employee to a position when such a transfer would violate a legitimate, nondiscriminatory policy of the employer, and for good reason. The contrary rule would convert a nondiscrimination statute into a mandatory preference statute, a result which would be both inconsistent with the nondiscriminatory aims of the ADA and an unreasonable imposition on the employers and coworkers of disabled employees.") (internal citations omitted); *Wernick v. Federal Reserve Bank of New York*, 91 F.3d 379, 384–85 (2d Cir.1996) ("Congress intended simply that disabled persons have the same opportunities available to them as are available to nondisabled persons."); *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1225 (11th Cir.1997) ("We are aware of no case under either the ADA or the Rehabilitation Act where an employer has been required to transfer an employee to another position where the employer (independent of concerns about disability) has a business policy against the pertinent kind of transfer."). *But see Aka v. Washington Hospital Center*, 156 F.3d 1284, 1305 (D.C.Cir.1998) (en banc) (noting that "[a]n employer is not required to reassign a disabled employee in circumstances 'when such transfer would violate a legitimate, nondiscriminatory policy of the employer,'" but also arguing against the dissent's claim that the ADA "mandat[es] nothing more than that the employer allow the disabled employee to submit his application along with all of the other candidates.").

Because Barnett's proposed accommodation would violate U.S. Air's legitimate seniority policy, we find that the proposed accommodation is unreasonable under the ADA.

## ORDER

The Dissent filed on October 6, 1998, published at 157 F.3d 744, 754 (9th Cir. 1998) is amended as follows:

In the first paragraph of the dissent, on page 754, the sentence beginning with the

words "Second, while stating" shall be deleted and replaced with the text below:

"Second, the majority establishes a rule rejecting accommodations under the ADA in the context of all seniority systems, whether determined by collective bargaining or unilaterally imposed by employers."

The text below shall be inserted as part of the first full paragraph on page 756, after the last sentence of that paragraph which ends with the words "an employer's failure to participate or investigate."

*Fjellestad v. Pizza Hut of America, Inc.,* 188 F.3d 944 (8th Cir.1999) (Finding that the failure of an employer to engage in an interactive process to determine whether reasonable accommodations are possible is prima facie evidence that the employer may be acting in bad faith.)

Delete section a., entitled "U.S. Air's Seniority System", which begins with the last paragraph on page 756 and extends through the paragraph on page 757 ending with the words "without undue disruption to its seniority system." Replace section a. with the following text:

a. U.S. AIR'S Seniority System

The majority holds that U.S. Air's seniority system precludes leaving Barnett in the mailroom as a reasonable accommodation for his disability. The majority acknowledges that the legislative history does not clearly support its position and admits that no other circuit has held that ADA accommodation is precluded by a seniority system which is not the result of a collective bargaining agreement. The majority relies for its holding on dicta in a Fifth Circuit opinion that is based on different facts.

The majority cites a number of opinions from other circuits which have found that the ADA does not require exempting a disabled employee from a seniority system established by a collective bargaining agreement. It imposes the same rule in this case despite the fact that the U.S. Air's seniority system was unilaterally imposed by the employer and was not the product of a collective bargaining agreement.

The majority holds that disabled workers requiring reasonable accommodation should have no priority in reassignment. Majority at 990–91. This holding is in direct conflict with several circuits and the EEOC's own Enforcement Guidance. The EEOC's guidelines explicitly state that reassignment is a reasonable accommodation for which disabled employees should have priority, even when transfers are normally not allowed:

The ADA requires employers to provide reasonable accommodations to individuals with disabilities, including reassignment, even though they are not available to others. Therefore, an employer who does not normally transfer employees would still have to reassign an employee with a disability, unless it could show that the reassignment caused an undue hardship. And, if an employer has a policy prohibiting transfers, it would have to modify that policy in order to reassign an employee with a disability, unless it could show undue hardship.

EEOC Enforcement Guidance: Reasonable Accommodations and Undue Hardship under the Americans with Disabilities Act at 19 (1999).

In *Aka v. Washington Hospital Center,* 156 F.3d 1284 (D.C.Cir.1998)(en banc), the D.C. Circuit rejected the view that the majority takes in this case, i.e., that the ADA requires "no more than equality among disabled and nondisabled employees" in reassignment decisions. Majority at 991. The *Aka* majority persuasively answered an argument identical to that made by the majority here: "The dissenters misunderstand both the text and legislative history of the statute, and deviate from the construction of the statute by other

circuits.... Indeed the ADA's reference to reassignment would be redundant if permission to apply were all it meant." *Id.* at 1303.

The Tenth Circuit, sitting en banc, also rejected the argument that the majority advances here. The Tenth Circuit concluded that "the reassignment obligation must mean something more than merely allowing a disabled person to compete equally with the rest of the world for a vacant position. Reassignment is, in fact, one of the forms of reasonable accommodation specifically mentioned by the statute to be utilized if necessary and reasonable to keep an existing disabled employee employed by the company." *Smith v. Midland Brake, Inc.,* 180 F.3d 1154, 1164 (10th Cir.1999)(en banc).

Summary judgment was inappropriate in this case. Barnett met his prima facie burden of demonstrating a reasonable accommodation by allowing him to remain in the mailroom and eliminating only one position from the seniority bid process. The burden should now shift to U.S. Air to prove that the accommodation is unreasonable or an undue hardship. 42 U.S.C. § 12112(5). In its rebuttal, U.S. Air offered only the statement of its vice President for Human resources and a copy of its seniority policy. U.S. Air claims that the effect of all potential ADA claimants would significantly disrupt the seniority system. Yet the record provides no information concerning the number of ADA claimants at U.S. Air, their seniority, or their need to be accommodated by exceptions to the seniority rules. Bald speculation on the part of the district court and an employer is insufficient to support summary judgment on a finding of "undue hardship." Nothing in the ADA supports finding that Barnett has the burden of proving that his proffered

accommodation would satisfy all possible future claimants. Indeed, such proof would be outside the knowledge and control of almost all employees (and many employers).[1]

The majority errs in creating a blanket rule that directly conflicts with the EEOC Enforcement Guidance and that severely undermines the reasonable accommodation provisions of the ADA. U.S. Air has failed to demonstrate that accommodating Barnett would cause undue disruption to its seniority system and we should not assume so. Instead, we should find that a triable issue of fact remains to be resolved by the district court.

## OPINION

WIGGINS, Circuit Judge:

Robert Barnett appeals the district court's grant of summary judgment in favor of his employer, U.S. Air, Inc., in Barnett's suit alleging discrimination and retaliation under the Americans with Disabilities Act. We have jurisdiction under 28 U.S.C. § 1291. For the following reasons, we affirm the district court's summary judgment in favor of U.S. Air.

### I. Facts

Robert Barnett worked for U.S. Air (and its predecessor) for ten years as a customer service agent. He worked in positions at the gate, ticket counter, ramp area, air freight, cargo, and mailroom. As a U.S. Air employee, Barnett was subject to U.S. Air's personnel policies, including its seniority system, which determines, among other things, duty assignments, shifts, promotions, and transfers.

In 1990, Barnett injured his back while working in a cargo position at San Francisco International Airport. After a leave of absence, he returned to the cargo position

---

1. The effect of an accommodation on a company's workforce, processes, or finances is beyond the ability of many workers to assess. Yet this need to assess proprietary informa-

tion in order to find an accommodation "reasonable", demonstrates why the EEOC requires employers to engage in an "interactive process" to determine an accommodation.

but found that he could no longer perform its physical requirements. Using his seniority, Barnett transferred into a swing-shift position in the mailroom.

In March 1992, Barnett's doctor recommended that he not perform heavy lifting in order to avoid further back injury. The doctor concluded that Barnett's back would not be harmed by the requirements of the swing-shift mailroom position. Unfortunately, in August 1992, Barnett exacerbated his back condition while pulling a mail cart. On August 17, a new doctor informed U.S. Air that Barnett could return to work without restrictions. On August 19, however, the doctor imposed permanent restrictions on Barnett, prohibiting him from excessive bending, twisting, turning, prolonged standing or sitting, and from lifting twenty-five pounds or more.

In August 1992, all of U.S. Air's cargo and mailroom positions became open for bidding from employees according to their seniority. Barnett learned that employees senior to him planned to bid for the swing-shift mailroom position. Barnett's seniority would then only entitle him to a position in cargo. On August 31, 1992, Barnett wrote to his manager, Robert Benson, asking for accommodation under the Americans with Disabilities Act ("ADA"). He asked U.S. Air to make an exception for him within its seniority system and thereby allow him to remain in his mailroom position. Barnett did not himself receive a written response to this letter, but, according to an interoffice memo, U.S. Air placed him on "limited duty" as of the next day, thereby creating an extra swing-shift mailroom position for him. Under U.S. Air's policy, an employee usually may not work on limited duty for more than sixty work days. Barnett worked in his limited duty position for almost five months.

On January 20, 1993, Barnett met with his supervisors. They told him that he could not remain in his limited duty position in the mailroom because he had been there well over sixty days and because he lacked the seniority to remain there. U.S.

Air informed Barnett that he would be placed on job injury leave because his medical restrictions prevented him from performing all the duties of the cargo position, the position to which his seniority entitled him, and that they would continue his salary for one month. On February 21, 1993, U.S. Air ended Barnett's salary continuance.

On January 23, 1992, Barnett wrote another letter to Benson suggesting two other forms of accommodation of his disability. The first was to provide him with special lifting equipment for the cargo position. The second was to modify the cargo position for him so that he would perform only desk work and be able to avoid the warehouse lifting and moving work. A few days later, U.S. Air received letters from two of Barnett's doctors stating that his disability precluded him from any position other than the mailroom. U.S. Air denied Barnett's new requests in March, and advised Barnett to bid for another position.

At the end of February 1993, Barnett filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC eventually granted Barnett the right to sue and, in November 1994, Barnett sued U.S. Air in district court for discrimination under the ADA for failure to accommodate his disability and for retaliation, among other claims.

The district court granted defendant U.S. Air summary judgment. The district court held that Barnett had established the first element of his prima facie case by showing that he had a disability within the meaning of the ADA. The district court concluded, however, that Barnett's proposed accommodations of his disability were not reasonable. The court held, therefore, that U.S. Air did not discriminate against Barnett by failing to retain him in the mailroom, to buy him special lifting equipment, or to modify the cargo position. The district court further held

that an employer may be liable under the ADA for failing to engage in an "interactive process" with the employee. The court found, however, that U.S. Air was not so liable because it had responded to Barnett's requests and was not at fault for the parties' failure to identify a reasonable accommodation. The district court therefore granted U.S. Air summary judgment on Barnett's discrimination claim under the ADA. The court also granted U.S. Air summary judgment on Barnett's retaliation claim, holding that Barnett had not shown a causal connection between his request for accommodation under the ADA and his placement by U.S. Air on job injury leave.

Barnett appeals the summary judgment in favor in U.S. Air on his discrimination and retaliation claims.

## II. Standard of Review

■ This court reviews a grant of summary judgment de novo. *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir.1997). The court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there is a genuine issue of material fact for trial, and whether the district court correctly applied the substantive law. *See id.* The district court's grant of summary judgment may be affirmed on any ground in the record, whether or not the district court relied on that ground. *See id.*

## III. Discussion

### A. *Americans with Disabilities Act*

The Americans with Disabilities Act of 1990 ("ADA") protects the disabled in the workplace by prohibiting affected employers from, among other things, "not making reasonable accommodations to the known physical or mental limitations of an other-

wise qualified individual with a disability who is an ... employee, unless such [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such [employer]." 42 U.S.C. § 12112(b)(5)(A).

### 1. *A Plaintiff's Prima Facie Case Under the ADA*

■ In order to bring a claim under the ADA, a plaintiff-employee has the burden of showing that he or she is a "qualified individual with a disability." The plaintiff must show that he or she is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see also* Cooper v. Neiman Marcus Group, 125 F.3d 786, 790 (9th Cir.1997); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir.1996). To establish a prima facie case, therefore, the plaintiff must show that (1) he or she is a disabled person within the meaning of the ADA, (2) he or she is able to perform the essential functions of the job with or without reasonable accommodation, and (3) he or she suffered an adverse employment decision because of his or her disability. *See* §§ 12112(b)(5)(A) & 12111(8); *see also Kennedy*, 90 F.3d at 1481.

In the case at hand, Barnett established the first and third elements of his prima facie case: the district court held that he was a disabled person within the meaning of the ADA[1] and Barnett's disability was the reason for his placement on job injury leave. The district court held, however, and we agree, that Barnett failed to establish the second element of his prima facie case. Specifically, as will be discussed in the following section, Barnett failed to show that, with reasonable accommodation, he would be able to perform the essential functions of the positions he wished to

---

1. U.S. Air failed to cross-appeal the district court's finding that Barnett has a disability within the meaning of the ADA. We do not, therefore, consider whether he has a disability

in light of this court's recent decision in *Thompson v. Holy Family Hosp.*, 121 F.3d 537 (9th Cir.1997).

hold.[2] Accordingly, his claim under the ADA must fail.

## 2. *Reasonable Accommodation*

■ Under the ADA, when an individual has a disability, his or her employer must accommodate the limitations resulting from that disability to the extent an accommodation is "reasonable" and does not unduly burden the employer. The question of what constitutes a "reasonable" accommodation has been the subject of much litigation across this country since Congress passed the ADA in 1990. The ADA gives only general guidance, stating that reasonable accommodation "*may* include ... job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, ... and other similar accommodations for individuals with disabilities." § 12111(9)(B) (emphasis added). As a result, a body of case law, rapidly growing, has sprung up to provide further guidelines for the courts in this difficult area. Whether a particular accommodation is reasonable depends on the circumstances of the individual case.

### (a) *Plaintiff's Burden*

■ Before we can reach the question of whether a particular accommodation is reasonable, we must address a preliminary question: Which party bears the burden of establishing the availability or existence of reasonable accommodation? In other words, does the plaintiff have to point, for example, merely to one possible accommodation and the defendant then have to show that reasonable accommodation did not exist, or does the plaintiff have to show that a specific reasonable accommodation was available to the defendant at the time plaintiff's limitations became known? This is an issue of first impression in this circuit. This circuit has, however, previously noted that the ADA places on the plaintiff the burden of showing that he or she is qualified, *i.e.,* that he or she can perform the essential functions of the job with or without reasonable accommodation. *See Cooper v. Neiman Marcus Group,* 125 F.3d 786, 790 (9th Cir.1997); *Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1481 (9th Cir.1996). We hold now that this prima facie burden on the plaintiff-employee includes the burden of showing the existence of a reasonable accommodation. This holding is dictated by the plaintiff's burden to show that an accommodation is reasonable. In order to be reasonable, an accommodation cannot be merely hypothetical. As part of his or her prima facie case, the plaintiff must show the existence of a position that he or she could perform either with or without specific reasonable accommodation. *See Foreman v. Babcock & Wilcox Co.,* 117 F.3d 800, 810 (5th Cir.1997) (holding that the plaintiff must show that a requested position is or was available which the plaintiff could perform), *cert. denied,* 522 U.S. 1115, 118 S.Ct. 1050, 140 L.Ed.2d 113 (1998); *Willis v. Conopco, Inc.,* 108 F.3d 282, 285 (11th Cir.1997) (holding that the ADA places on the plaintiff the burden of "producing probative evidence that reasonable accommodations were available"); *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 563–64 (7th Cir.1996) (holding that the plaintiff-employee must establish that he or she could perform the essential functions of his or her job with or without reasonable accommodation); *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1183 (6th Cir.1996) ("[T]he disabled individual bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable."); *White v. York Int'l Corp.,* 45 F.3d 357, 361 (10th Cir.1995) (holding that the plaintiff must show that accommodation is possible, the employer must then show inability to accommodate, and the plaintiff must then produce concrete sug-

---

**2.** Barnett does not contend that he could perform the essential functions of the positions he desired without accommodation. He had to show, therefore, that he could perform the essential functions of an available position with reasonable accommodation.

gestions for possible accommodations). *But see Stone v. City of Mount Vernon,* 118 F.3d 92, 98 (2d Cir.1997) (holding that plaintiff must merely " 'suggest the existence of a particular plausible accommodation,' " which the defendant must then show is unreasonable), *cert. denied,* 522 U.S. 1112, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998).

■ By recognizing the plaintiff's burden in court to show the existence of a specific accommodation, we do not mean to suggest that an employer does not have any role in assessing and finding a reasonable accommodation for a disabled employee at the time that limitations become known. Moreover, we are not suggesting that, in order for an accommodation to be reasonable, the employee must have suggested it to the employer. We simply mean that, following discovery, the plaintiff in an ADA discrimination suit must be able to point to at least one specific reasonable accommodation that was available to the employer (but which the employer presumably did not pursue). Once the plaintiff has established the existence of reasonable accommodation that would enable him or her to perform the essential functions of an available job, the burden switches to the defendant to show that this accommodation would constitute an undue hardship. *See* 42 U.S.C. § 12112(b)(5)(A).

### (b) *Barnett's Proposed Accommodations*

In this case, Barnett made three concrete suggestions to his employer for accommodation of the limitations created by his disability. He has not suggested any additional possible accommodations in court. The accommodations at issue therefore are the three Barnett requested in letters to U.S. Air: (1) that U.S. Air create an exception for him within its seniority system and allow him to remain in the swing-shift mailroom position, (2) that U.S. Air purchase special lifting equipment to enable him to serve in the cargo position, or (3) that U.S. Air alter the cargo

position so that Barnett would perform only desk work. We will examine these suggested accommodations one by one to see whether they are reasonable.

### (i) *Swing–Shift Position in the Mailroom*

■ Barnett requested that U.S. Air make an exception for him within U.S. Air's seniority system and leave him in the swing-shift mailroom position. Barnett argues that it would have been a reasonable accommodation for U.S. Air to make such an exception. We do not agree.

The question of whether reasonable accommodation requires an employer somehow to exempt a disabled employee from its seniority system is a question that has generated many pages in law reviews, see, e.g., Condon A. McGlothlen & Gary N. Savine, *Eckles v. Consolidated Rail Corp.: Reconciling the ADA with Collective Bargaining Agreements: Is this the Correct Approach?,* 46 DePaul L.Rev. 1043 (1997), but is a question of first impression in this circuit.

The ADA itself provides minimal guidance. It states that reasonable accommodation "may include ... reassignment to a vacant position," 42 U.S.C. § 12111(9)(B), but is silent regarding the effect of seniority systems on whether a position is actually "vacant." This silence becomes conspicuous when contrasted to Congress' explicit permission in Title VII of the Civil Rights Act for employers to treat employees differently pursuant to a "bona fide seniority or merit system." 42 U.S.C. § 2000e–2(h). This silence then suggests that Congress did not intend for a seniority system always to trump reasonable accommodation of a disabled employee. Rebutting this conclusion, however, is the history of the Rehabilitation Act, on which many of the provisions of the ADA were based. The Rehabilitation Act likewise did not have an explicit mention of seniority systems. Nevertheless, federal courts almost uniformly adopted a per se rule that reasonable accommodation under the Rehabilitation Act did not

require employers to infringe on the seniority rights of other employees. *See, e.g., Mason v. Frank,* 32 F.3d 315, 319–20 (8th Cir.1994); *Shea v. Tisch,* 870 F.2d 786, 789–90 (1st Cir.1989). *But see Buckingham v. United States,* 998 F.2d 735, 741–42 (9th Cir.1993) (distinguishing the other cases by noting that the seniority program in this case included an exception for exceptional circumstances which could apply to the disabled employee). The precedent established by reasonable accommodation cases under the Rehabilitation Act is widely used to interpret reasonable accommodation under the ADA, along with the ADA's list of possible accommodations (which was not in the Rehabilitation Act). Congress specified in the ADA that enforcement agencies were to ensure that standards under the ADA and the Rehabilitation Act are not inconsistent or conflicting. *See* 42 U.S.C. § 12117.

The ADA's ambiguous legislative history is of little help in determining whether seniority policies should be treated the same under the ADA and the Rehabilitation Act. On one hand, there is evidence that Congress considered seniority rights to be merely one factor in reasonable accommodation analysis under the ADA, rather than a dispositive factor. *See* S. REP. NO. 101–116, at 32 (1989) ("The collective bargaining agreement could be relevant, however, in determining whether a given accommodation is reasonable. For example, if a collective bargaining agreement reserves certain jobs for employees with a given amount of seniority, it may be considered as a factor in determining whether it is a reasonable accommodation to assign an employee with a disability without seniority to that job."); H.R. REP. NO. 101–485, pt. 2, at 63 (1990) (same language), *reprinted in* 1990 U.S.C.C.A.N. 303, 345. On the other hand, the House and Senate Reports also state that reasonable accommodation does not require "bumping" a more senior employee to create a vacancy (although if the employer chose to do so, such bumping would consti-

tute reasonable accommodation). *See* S. REP. NO. 101–116, at 32 (1989); H.R. REP. NO. 101–485, pt. 2, at 63 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 345.

In the face of this ambiguity, we are persuaded by well-reasoned opinions from other circuits that have concluded that the ADA does not require an employer to give disabled employees preference over non-disabled employees in hiring and reassignment decisions. But this is precisely what Barnett requests. U.S. Air's seniority system is a decades-old system which controls the duty assignments, shifts, transfers, holidays, etc. of U.S. Air's approximately fourteen thousand customer service agents. Barnett does not claim that U.S. Air's policy is illegitimate and an excuse for unlawful discrimination. But Barnett does claim that U.S. Air should have left him in the mailroom position, thus excepting him from its seniority policy, because of his disability. Although many ADA cases have held that reasonable accommodation does not require exempting a disabled employee from a collectively bargained seniority system, *see, e.g., Foreman v. Babcock & Wilcox Co.,* 117 F.3d 800, 810 (5th Cir.1997); *Cochrum v. Old Ben Coal Co.,* 102 F.3d 908, 912–13 (7th Cir.1996); *Eckles v. Consolidated Rail Corp.,* 94 F.3d 1041, 1051 (7th Cir.1996) (adopting a "per se" rule that reasonable accommodation does not require "sacrificing the collectively bargained, bona fide seniority rights of other employees"); *Benson v. Northwest Airlines, Inc.,* 62 F.3d 1108, 1114 (8th Cir. 1995), Barnett argues that his case is different because U.S. Air's seniority policy is not the result of a collective bargaining agreement. We reject this argument and agree with a Fifth Circuit panel that, in dicta, found Barnett's claimed distinction to be irrelevant. In *Foreman v. Babcock Wilcox Co.,* 117 F.3d 800 (5th Cir.1997), the Fifth Circuit rejected a disabled employee's claim that the ADA required his employer to reassign him to a new position even in the face of a collectively bargained seniority provision that would prohibit the

requested transfers. The Court rejected the employee's argument, making clear that its decision was not based on the special status of collective bargaining agreements.

> [E]ven if there were no CBA in place, B & W would not be obligated to accommodate Foreman by reassigning him to a new position. "[W]e do not read the ADA as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring disabled persons be given priority in hiring or reassignment over those who are not disabled. It prohibits employment discrimination against qualified individuals with disabilities, no more and no less."

*Foreman,* 117 F.3d at 810 (quoting *Daugherty v. City of El Paso,* 56 F.3d 695 (5th Cir.1995)).

■ We agree with the *Daugherty* court and the other circuits that have interpreted the ADA as requiring no more than equality among disabled and nondisabled employees in hiring and reassignment decisions. This principle was well articulated by a recent Seventh Circuit panel:

> While Congress enacted the ADA to establish a "level playing field" for our nation's disabled workers, it did not do so in the name of discriminating against persons free from disability. Restated, the ADA does not mandate a policy of "affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over those who are not disabled."

*Malabarba v. Chicago Tribune Co.,* 149 F.3d 690, 700 (7th Cir.1998) (quoting *Daugherty,* 56 F.3d at 700); *see also Dalton v. Subaru–Isuzu Automotive, Inc.,* 141 F.3d 667, 679 (7th Cir.1998) ("[W]e have been unable to find a single ADA or Rehabilitation Act case in which an employer has been required to reassign a disabled employee to a position when such a transfer would violate a legitimate, nondiscriminatory policy of the employer, and for good reason. The contrary rule would convert a nondiscrimination statute into a mandatory preference statute, a result which would be both inconsistent with the nondiscriminatory aims of the ADA and an unreasonable imposition on the employers and coworkers of disabled employees.") (internal citations omitted); *Wernick v. Federal Reserve Bank of New York,* 91 F.3d 379, 384–85 (2d Cir.1996) ("Congress intended simply that disabled persons have the same opportunities available to them as are available to nondisabled persons."); *Duckett v. Dunlop Tire Corp.,* 120 F.3d 1222, 1225 (11th Cir.1997) ("We are aware of no case under either the ADA or the Rehabilitation Act where an employer has been required to transfer an employee to another position where the employer (independent of concerns about disability) has a business policy against the pertinent kind of transfer."). *But see Aka v. Washington Hospital Center,* 156 F.3d 1284, 1305 (D.C.Cir.1998) (en banc) (noting that "[a]n employer is not required to reassign a disabled employee in circumstances 'when such transfer would violate a legitimate, nondiscriminatory policy of the employer,'" but also arguing against the dissent's claim that the ADA "mandat[es] nothing more than that the employer allow the disabled employee to submit his application along with all of the other candidates.").

Because Barnett's proposed accommodation would violate U.S. Air's legitimate seniority policy, we find that the proposed accommodation is unreasonable under the ADA.

#### (ii) *Special Lifting Equipment*

■ Barnett suggests that U.S. Air should have purchased a "robotics" machine to enable him to perform the lifting required by the cargo position. Barnett has not shown that this special lifting equipment would provide him with any accommodation of his disability not already provided by the forklifts furnished in cargo. An employer is not required to provide a disabled employee with the most

technologically advanced equipment. *See* 29 C.F.R. § 1630.9 app. § 1630.9 ("[A]n employer would not have to provide an employee disabled by a back impairment with a state-of-the-art mechanical lifting device if it provided the employee with a less expensive or more readily available device that enabled the employee to perform the essential functions of the job."). Because Barnett has not shown its requisiteness, U.S. Air did not have to purchase special lifting equipment for him.

### (iii) *Modification of Cargo Position*

 Barnett's third and final suggestion for accommodation of his disability is that U.S. Air could have modified the shift requirements of the cargo position so that he was only required to perform desk work. The district court found that the cargo position's essential functions included clerical, warehouse, and driving functions. Barnett has not shown that a genuine issue of material fact exists as to whether cargo employees were required to lift and move cargo; the evidence is clear that they were. Reasonable accommodation does not require that an employer eliminate or reassign essential job functions. *See* 42 U.S.C. § 12111(8) (defining a "qualified individual" as one who can perform the essential functions of the job desired); *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 809–810 (5th Cir.1997), *cert. denied,* 522 U.S. 1115, 118 S.Ct. 1050, 140 L.Ed.2d 113 (1998); *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 913 (7th Cir. 1996). Nor does an employer have to alter fundamentally the nature of a job in order to accommodate a disabled employee. *See White v. York Int'l Corp.*, 45 F.3d 357, 362 (10th Cir.1995). Likewise, an employer does not have to create a new position in order to accommodate reasonably a disabled employee. *See Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1187 (6th Cir.1996); *White,* 45 F.3d at 362; *Daugherty v. City of El Paso,* 56 F.3d 695, 700 (5th Cir.1995), *cert. denied,* 516 U.S. 1172, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996). U.S. Air did not have to restrict the cargo position to its clerical functions for Barnett in order to accommodate his disability.

In summary, Barnett has failed to show that U.S. Air's refusal to allow him to remain in the mailroom was a refusal to accommodate reasonably his disability. We do not agree that it was U.S. Air's responsibility to find or create a job for him given that Barnett has not shown that there was any position that he could perform with reasonable accommodation. *See Willis v. Conopco, Inc.,* 108 F.3d 282, 286 (11th Cir.1997) (holding that plaintiff failed to meet her burden because she did not produce any evidence that an available alternative position existed).

### 3. *Interactive Process*

Barnett asserts that an employer has an obligation under the ADA to engage in an "interactive process" with its disabled employee independent from its obligation to make reasonable accommodation. The phrase "interactive process" refers to discussions between the employer and the disabled employee regarding the employee's limitations and possible accommodations. Barnett argues that an employer's failure to engage in an interactive process alone exposes an employer to liability under the ADA. The district court agreed with Barnett, but found that U.S. Air had sufficiently engaged with Barnett to avoid process liability. We do not agree with the district court's holding that an employer can be independently liable for failing to engage in an interactive process.

The ADA authorizes the Equal Employment Opportunity Commission ("EEOC") to issue regulations enforcing the ADA. *See* 42 U.S.C. § 12116. The regulations issued by the EEOC define "reasonable accommodation" in the same manner as the ADA, and add:

To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need

of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(*o*)(3). The appendix to the regulations, intended as "interpretive guidance," adds:

Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the qualified individual with a disability.

§ 1630 app. § 1630.9. The appendix goes on to specify a four-part process that the employer "should" follow. § 1630 app. § 1630.9.

■ Barnett argues that an employee's first request for accommodation triggers the employer's duty to initiate an "interactive process." The regulations, however, state only that an interactive process "*may* be necessary." § 1630.2(*o*)(3) (emphasis added). The regulations do not state that it *is* necessary. We interpret this as permissive language which also serves as a warning to employers that a failure to engage in an interactive process might expose them to liability for failing to make reasonable accommodation. As the appendix notes, the employer "must make a reasonable effort to determine the appropriate accommodation." § 1630 app. § 1630.9. This statement means that the employer will be liable for discrimination if a reasonable accommodation was available, but the employer did not act upon it. The ADA and its regulations do not, however, create independent liability for the employer for failing to engage in ritualized discussions with the employee to find a reasonable accommodation. *See Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir.1997) (holding that the plaintiff has the burden of showing available accommoda-

tions and that the employer cannot be found liable "merely for failing to engage in the [interactive] process itself"); *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir.1995) (noting that the regulations only recommend that an interactive process occur, and only after the employee shows that reasonable accommodation is available); *Staub v. Boeing Co.*, 919 F.Supp. 366, 370 (W.D.Wash.1996) (holding that the regulations only recommend an interactive process). *But see Mengine v. Runyon*, 114 F.3d 415, 420 (3d Cir.1997) (citing ADA cases and holding that, under the Rehabilitation Act, "both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith," but stating that, in the absence of a reasonable accommodation, the employer cannot be liable under the ADA or the Rehabilitation Act); *Taylor v. Principal Fin. Group*, 93 F.3d 155, 165 (5th Cir.) (holding that "the employee's initial request for an accommodation ... triggers the employer's obligation to participate in the interactive process of determining one"), *cert. denied*, 519 U.S. 1029, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996); *Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir.1996) (holding that both parties have a responsibility to participate in an interactive process and that "courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary").

Barnett argues that our interpretation of the statute exposes an employee to the "whim" of the employer's unilateral decisions regarding the employee's abilities. Barnett overstates the vulnerability of the employee: If the employer is incorrect in its assessment of the existence of reasonable accommodation that would not unduly burden the employer (given the employer's knowledge of the employee's abilities), the employer is liable under the ADA for failing to provide reasonable accommodation. Thus, an employer's decision not to

engage in an interactive process may put it at peril, but it does not create liability independent from a resulting failure to accommodate the employee's disability. Barnett's proffered rule could create a potential oddity under the law: An employer which had reasonably accommodated its employee's disability could be liable nonetheless under the ADA for failing to engage the employee interactively in the process. Moreover, it is not clear how such a rule would operate. At what point would an employer incur process liability? Whenever it failed to perform one of the recommended steps in the interactive process? Whenever it was merely slow in doing so?

We agree that most, if not all, employers should engage in an interactive process with their disabled employees. Logically, such a process will ensure an optimal accommodation of the employee's limitations. We do not agree, however, that an employer's failure to do so exposes it automatically and independently to liability under the ADA. Rather, the inquiry is whether the employer failed to make required reasonable accommodations for the employee. A failure to engage in an interactive process may be relevant to that inquiry; it is not a separate inquiry.

### B. *Retaliation under the ADA*

Barnett also claimed that U.S. Air retaliated against him for his request for accommodation under the ADA by placing him involuntarily on job injury leave in January 1993 and by ending his salary continuance in February 1993. The district court granted U.S. Air summary judgment. We agree and affirm.

The ADA prohibits retaliation against or interference with a person who has asserted rights under the ADA. *See* 42 U.S.C. §§ 12203(a) & (b). Because this circuit has not yet adopted a framework for analyzing retaliation claims under the ADA, we now adopt the framework used to analyze retaliation claims under Title VII of the Civil Rights Act. *See, e.g., Yartzoff v.*

*Thomas,* 809 F.2d 1371 (9th Cir.1987) (setting out Title VII framework); *see also Talanda v. KFC Nat'l Management Co.,* 140 F.3d 1090 (7th Cir.1998) (applying Title VII retaliation analysis to ADA retaliation claim); *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 (5th Cir.1998) (same); *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1287 (11th Cir.1997) (same).

In order to establish a prima facie case of retaliation under the ADA, a plaintiff must show (1) that he or she engaged in a protected activity, (2) that he or she suffered an adverse employment decision, and (3) that there was a causal link between the protected activity and the adverse decision. *See EEOC v. Hacienda Hotel,* 881 F.2d 1504, 1513–14 (9th Cir. 1989) (applying Title VII retaliation claim analysis). The employer then has the burden of producing a legitimate nondiscriminatory reason for the adverse employment decision. *See id.* at 1514. The plaintiff must then prove that the employer's proffered reason is mere pretext and that the decision was made as retaliation for the protected activity. *See id.*

The district court determined that Barnett had failed to show a causal connection between his request for accommodation and his placement on job injury leave. The district court probably erred. Barnett produced sufficient evidence from which the causal connection may be inferred by producing evidence of the temporal proximity of the adverse action to his request and of employer knowledge of his request. *See Yartzoff,* 809 F.2d at 1376. Barnett's retaliation claim, however, still cannot survive summary judgment.

U.S. Air met its burden to offer "some legitimate, nondiscriminatory reason for the adverse employment decision." *Hacienda Hotel,* 881 F.2d at 1514. Upon receiving Barnett's request for accommodation, U.S. Air immediately created a temporary limited duty position for him, which Barnett held for over twice the usu-

al maximum period. U.S. Air placed Barnett on job injury leave five months after his request because Barnett's physical limitations, which were permanent according to his own doctors' reports, and his seniority level at U.S. Air directed U.S. Air to the conclusion that a position that Barnett could perform was not available at U.S. Air. In response, Barnett has to prove that the employer's proffered explanation is "a mere pretext for retaliation or that a discriminatory reason more likely motivated the employer's action." *Id.* Barnett has failed to raise a genuine factual issue as to whether U.S. Air's legitimate reason for placing him on job injury leave was mere pretext. Barnett has not produced evidence to raise a triable issue as to whether U.S. Air made the decision for retaliatory reasons, rather than because Barnett could not perform an available position at U.S. Air.

### IV. Conclusion

For the foregoing reasons, the district court's summary judgment in favor of U.S. Air is AFFIRMED.

**B. FLETCHER**, Circuit Judge, Dissenting:

I respectfully dissent. The majority opinion diminishes the protections of the Americans with Disabilities Act ("ADA") for disabled workers residing in the Ninth Circuit in ways not intended by the statute. First, the majority eliminates an employer's responsibility to seek reasonable accommodation for disabled workers by holding that employers have no obligation to engage in an "interactive process." Second, the majority establishes a rule rejecting accommodations under the ADA in the context of all seniority systems, whether determined by collective bargaining or unilaterally imposed by employers. Finally, in its application of the law to the facts, the majority puts all of the burden on the employee not only to proffer a reasonable accommodation but also to prove that the accommodation will work

before the employer has any obligation to the employee.

Barnett proposed three solutions that would accommodate his disability: (1) that he remain working in the mailroom; (2) that U.S. Air provide special lifting equipment to enable him to perform the cargo position; or (3) that U.S. Air allow him to do only the office-work portion of the cargo position and reassign his lifting work to other persons in the cargo operation.

In its dismissal of each of Barnett's claims, the majority would have us believe that no reasonable accommodation is possible: that U.S. Air's seniority system is intractable; that forklifts satisfy any possible lifting accommodation that Barnett could seek; that reassignment of work amounts to creating a new position; and that no other possible reasonable accommodation exists.

### THE INTERACTIVE PROCESS

All that we know about potential accommodations is what Barnett proposed. U.S. Air made no effort to determine if it could reasonably accommodate Barnett, instead it simply rejected Barnett's proposals as unworkable. Under the majority opinion, this is all U.S. Air, and any other employer, has to do-sit on the sidelines and find fault with suggested accommodations. If the employer has no obligation to participate in determining if a reasonable accommodation exists, the disabled employee has no resource beyond his own knowledge, skill and ability. The employer's broader knowledge and experience is not available to him. As a result, the effectiveness of the ADA as a tool to use constructively the skills of disabled persons is seriously diminished.

U.S. Air discriminated against Barnett by failing to engage in an "interactive process" to determine if a reasonable accommodation was possible. The EEOC's implementing regulations for the ADA provide that:

To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(*o*)(3). The Seventh Circuit has found that this regulation "envision[s] an interactive process that requires participation by both parties." *Beck v. University of Wisconsin Bd. of Regents,* 75 F.3d 1130, 1135 (7th Cir.1996). The EEOC agrees. In the accompanying EEOC interpretive guidance to the regulations, the EEOC states:

[T]he employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability.

29 C.F.R. § 1630 app. 1630.9. While the language of the regulation uses "may," the interpretive guidance provided by the EEOC indicates that we should interpret "may" narrowly to cover only those circumstances where availability or nonavailability of a reasonable accommodation is clear. The district court concluded that liability may be imposed upon an employer for failing to engage in the interactive process. However, the majority reversed, finding that the use of "may" made the interactive process purely an option on the part of a company. Majority at 992–93.

We need not and should not interpret the language of § 1630.2(*o*)(3) as permissive. Section 1630.2(0)(3) states that it "may be necessary" to initiate an interactive process. The term "may" describes the fact that sometimes there may be the necessity to engage in an interactive process. When it is necessary, it is not optional. "May" is not being used to create

a permissive option. Only if it is clear that a reasonable accommodation is available, or clear that there is no reasonable accommodation available, may an employer not initiate an interactive process with the disabled employee. In cases where accommodation may be possible, the interactive process is required. This interpretation of § 1630.2(*o*)(3) is consistent with the intent of the EEOC as evidenced by the mandatory language used in the EEOC's interpretive guidance for the section. *See* § 1630 app. 1630.9.

If this were an ideal world peopled by well intentioned employers, clever employees and no informational barriers, the use of an interactive process to determine whether a reasonable accommodation exists could be optional. We do not live in such a world. Some employers are unwilling to accommodate disabled workers. Some employees can propose only limited ideas for accommodation because they lack sufficient knowledge, skill or ability to identify a workable accommodation. Informational barriers are high. A reasonable accommodation may require detailed knowledge of a company's work flow and staffing, as well as knowledge of the available technology that could be used in conjunction with the company's operations. This is particularly true because, under the ADA, the term "reasonable" is tied to the resources and processes of the individual company. 29 C.F.R. § 1630.2(p)(2). So what would be reasonable for one company to implement may not be reasonable for another. Determinations of reasonable accommodation also require information about the worker's disability and the limitations that the disability imposes. Since the determination of a reasonable accommodation usually will require the sharing of information between employer and employee, and since the EEOC expressly recognizes the need for dialogue to determine a company's ability to accommodate an employee, 29 C.F.R. § 1630, app. 1630.9, the interactive process is not optional ex-

cept in those rare cases where the answer is clear.

This is a case of first impression for the Ninth Circuit and other circuits that have addressed this issue are split on whether a cause of action exists for failing to engage in an interactive process. The Third, Fifth, and Seventh Circuits have held that a cause of action exists.[1] *See Mengine v. Runyon*, 114 F.3d 415, 419 (3d Cir.1997) (finding that an employer is required to participate in an interactive process under the Rehabilitation Act); *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 165 (5th Cir.) (finding that a request for accommodation obligates an employer to participate in the process of determining one, but that summary judgment was still appropriate because the plaintiff failed to request an accommodation), *cert. denied*, 519 U.S. 1029, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996); *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1285–86 (7th Cir.1996) (finding that an employer has a good faith obligation to help an employee determine a reasonable accommodation and reversing the district court's summary judgment, holding that the employer has an obligation to help an employee initiate a request for accommodation). But *see White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir.1995). (An employee first must be "qualified" (some accommodation in light of disability possible) before the employer is obligated to engage in the interactive process); *Willis v. Conopco*, 108 F.3d 282, 285 (11th Cir.1997) (even if an employer has an obligation to participate in an interactive process, an employee cannot bring a cause of action for an employer's failure to participate or investigate). *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944 (8th Cir. 1999) (Finding that the failure of an employer to engage in an interactive process to determine whether reasonable accommodations are

possible is prima facie evidence that the employer may be acting in bad faith.)

The burden imposed by requiring the interactive process is not onerous. As the Seventh Circuit recognized, an employer's obligation under the interactive process is often no more than to communicate with the employee and determine what the problem is. *See Bultemeyer*, 100 F.3d at 1286–87. Here, U.S. Air never even bothered to talk with Barnett.

We should affirm the district court's finding that an employer may be liable under the ADA for failing to participate in the interactive process. However, I disagree with the district court that summary judgment in U.S. Air's favor is appropriate. Trial is necessary to determine whether the interactive process was undertaken and, if so, whether it was adequate. The EEOC's interactive process requires an employer to:

(1) Analyze the particular job involved and determine its purpose and essential functions;

(2) Consult with the individual with a disability to ascertain the precise job-related limitations imposed by the individual's disability and how those limitations could be overcome with a reasonable accommodation;

(3) In consultation with the individual to be accommodated, identify potential accommodations and assess the effectiveness each would have in enabling the individual to perform the essential functions of the position;

(4) Consider the preference of the individual to be accommodated and select and implement the accommodation that is most appropriate for the employee and the employer.

29 C.F.R. § 1630 app. 1630.9.

Conflicting evidence in the record requires trial on whether there was compliance.

---

1. In addition the First Circuit has indicated that it also may find that a cause of action exists. *See Jacques v. Clean-Up Group, Inc.*, 96 F.3d 506, 513–14 (1st Cir.1996) (finding that a cause of action may exist, but holding that the jury verdict for the employer was not unreasonable).

BARNETT'S SUGGESTED
ACCOMMODATIONS

### a. U.S. AIR'S Seniority System

The majority holds that U.S. Air's seniority system precludes leaving Barnett in the mailroom as a reasonable accommodation for his disability. The majority acknowledges that the legislative history does not clearly support its position and admits that no other circuit has held that ADA accommodation is precluded by a seniority system which is not the result of a collective bargaining agreement. The majority relies for its holding on dicta in a Fifth Circuit opinion that is based on different facts.

The majority cites a number of opinions from other circuits which have found that the ADA does not require exempting a disabled employee from a seniority system established by a collective bargaining agreement. It imposes the same rule in this case despite the fact that the U.S. Air's seniority system was unilaterally imposed by the employer and was not the product of a collective bargaining agreement.

The majority holds that disabled workers requiring reasonable accommodation should have no priority in reassignment. Majority at 990–91. This holding is in direct conflict with several circuits and the EEOC's own Enforcement Guidance. The EEOC's guidelines explicitly state that reassignment is a reasonable accommodation for which disabled employees should have priority, even when transfers are normally not allowed:

The ADA requires employers to provide reasonable accommodations to individuals with disabilities, including reassignment, even though they are not available to others. Therefore, an employer who does not normally transfer employees would still have to reassign an employee with a disability, unless it could show that the reassignment caused an undue hardship. And, if an employer has a policy prohibiting transfers, it would have to modify that policy in order to reassign an employee with a disability, unless it could show undue hardship. EEOC Enforcement Guidance: Reasonable Accommodations and Undue Hardship under the Americans with Disabilities Act at 19 (1999).

In *Aka v. Washington Hospital Center*, 156 F.3d 1284 (D.C.Cir.1998)(en banc), the D.C. Circuit rejected the view that the majority takes in this case, i.e., that the ADA requires "no more than equality among disabled and nondisabled employees" in reassignment decisions. Majority at 991. The *Aka* majority persuasively answered an argument identical to that made by the majority here: "The dissenters misunderstand both the text and legislative history of the statute, and deviate from the construction of the statute by other circuits.... Indeed the ADA's reference to reassignment would be redundant if permission to apply were all it meant." *Id.* at 1303.

The Tenth Circuit, sitting en banc, also rejected the argument that the majority advances here. The Tenth Circuit concluded that "the reassignment obligation must mean something more than merely allowing a disabled person to compete equally with the rest of the world for a vacant position. Reassignment is, in fact, one of the forms of reasonable accommodation specifically mentioned by the statute to be utilized if necessary and reasonable to keep an existing disabled employee employed by the company." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1164 (10th Cir.1999)(en banc).

Summary judgment was inappropriate in this case. Barnett met his prima facie burden of demonstrating a reasonable accommodation by allowing him to remain in the mailroom and eliminating only one position from the seniority bid process. The burden should now shift to U.S. Air to prove that the accommodation is unreasonable or an undue hardship. 42 U.S.C. § 12112(5). In its rebuttal, U.S. Air offered only the statement of its vice Presi-

dent for Human resources and a copy of its seniority policy. U.S. Air claims that the effect of all potential ADA claimants would significantly disrupt the seniority system. Yet the record provides no information concerning the number of ADA claimants at U.S. Air, their seniority, or their need to be accommodated by exceptions to the seniority rules. Bald speculation on the part of the district court and an employer is insufficient to support summary judgment on a finding of "undue hardship." Nothing in the ADA supports finding that Barnett has the burden of proving that his proffered accommodation would satisfy all possible future claimants. Indeed, such proof would be outside the knowledge and control of almost all employees (and many employers).[2]

The majority errs in creating a blanket rule that directly conflicts with the EEOC Enforcement Guidance and that severely undermines the reasonable accommodation provisions of the ADA. U.S. Air has failed to demonstrate that accommodating Barnett would cause undue disruption to its seniority system and we should not assume so. Instead, we should find that a triable issue of fact remains to be resolved by the district court.

b. Special Lifting Equipment

Barnett proposed that U.S. Air purchase a device to assist him in loading and unloading cargo as a proposed accommodation to allow him to work in the cargo operations. Barnett subsequently contacted the Job Accommodation Network, and obtained information on a number of mechanical lifting devices designed to assist workers in lifting boxes and bags. Unfortunately, Barnett unartfully used the word "robotics" in his initial request for accommodation. U.S. Air, and now the majority, focus on this poor choice of wording to suggest that Barnett sought "technologi-

cally advanced equipment." Majority at 992.

The devices Barnett suggested that U.S. Air evaluate were quite "low-tech," but there is no evidence that U.S. Air even considered them. Instead, U.S. Air told Barnett that forklifts were available to assist in lifting. While U.S. Air need not provide Barnett with "a state-of-the-art mechanical lifting device if it provide[s] ... a less expensive or more readily available device," 29 C.F.R. § 1630.9 app. 1630.9, its provision of a forklift for lifting individual suitcases and other bags is patently impractical. Proposing the use of a forklift to lift an individual suitcase is rather like giving Barnett a shotgun to swat a fly or a Phillips head screwdriver for a flat screw. U.S. Air might as well have told Barnett to use a backhoe. That a tool performs a similar function doesn't make it a proper tool for a particular job. Barnett sought a mechanical accommodation to compensate for his disability. U.S. Air, in effect, ignored his request.

The failure to explore appropriate lifting aids illustrates why the interactive process should have been mandatory in this case. Barnett did all he could. He proposed an accommodation, then researched and suggested the type of equipment for that accommodation. U.S. Air refused to listen or assist. It made no inquiries into alternative lifting devices, refused to talk with Barnett about the accommodation, and merely poked holes into the proposals Barnett put before it.

The burden placed on Barnett by the majority is more than he should be required to bear. Since U.S. Air failed to even consider any of the special lifting equipment options proffered by Barnett, we cannot know if any of these accommodations would have worked. Under the majority's interpretation of the ADA, Barnett would have to purchase the machines

2. The effect of an accommodation on a company's workforce, processes, or finances is beyond the ability of many workers to assess. Yet this need to assess proprietary informa-

tion in order to find an accommodation "reasonable", demonstrates why the EEOC requires employers to engage in an "interactive process" to determine an accommodation.

suggested and prove their effectiveness before U.S. Air would be forced to accommodate him.

I respectfully suggest that we should affirm the district court's interpretation of the ADA, but remand for trial as to its application to this case.