244 F.3d 675 (9th Cir. 2001)
 DAVID WILLIS, Plaintiff-Appellant,
v.
PACIFIC MARITIME ASSOCIATION;INTERNATIONAL LONGSHOREMEN'S & WAREHOUSEMEN'S UNION, LOCAL #10.; INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSEMEN'S UNION, Defendants-Appellees.
PAUL GOMEZ, Plaintiff-Appellant,
v.
PACIFIC MARITIME ASSOCIATION;INTERNATIONAL LONGSHOREMEN'S & WAREHOUSEMEN'S UNION, LOCAL#10.; INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSEMEN'S UNION; INTERNATIONAL LONGSHOREMEN'S & WAREHOUSEMEN'S UNION, LOCAL #34, Defendants-Appellees.
 Nos. 97-16778, 97-16779
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted November 3, 1998
Filed January 10, 2001
Amended March 27, 2001
 
 Kathleen A. McCormac and Carolyn Hunt Cottrell, Schneider & McCormac, San Francisco, California, for the plaintiffsappellants.
 D. Ward Kallstrom and Gregory D. Wellons, Lillick & Charles LLP, San Francisco, California; Richard S. Zuckerman, Leonard, Carder, Nathan, Zuckerman, Ross, Chin & Remar, San Francisco, California, for the defendantsappellees.
 Gwendolyn Young Reams, Associate General Counsel, Philip B. Sklover, Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, and Barbara L. Sloan, Attorney, Washington, D.C., for amicus Equal Employment Opportunity Commission.
 Appeals from the United States District Court for the Northern District of California Vaughn R. Walker, District Judge, Presiding. D.C. No. CV-95-04379-VRW D.C. No.CV-96-00628
 Before: Arthur L. Alarcon, Diarmuid F. O'Scannlain, and Ferdinand F. Fernandez, Circuit Judges.
 ORDER AND AMENDED OPINION ALARCON, Circuit Judge:
 
 ORDER
 
 1
 The opinion filed January 10, 2001 is hereby amended as follows:On page 342 of the slip opinion filed January 10, 2001, delete the first paragraph of part II and insert instead:
 
 II
 
 2
 Willis and Gomez contend that the Appellees dis criminated against them by failing to make a reason able accommodation for their disabilities. They argue that "Appellees are required to provide reason able accommodation for disabled individuals even if such accommodation is contrary to the terms of the collective bargaining agreement." Appellants' open ing brief at 14.
 
 
 3
 They do not contend nor have they demonstrated that alternative accommodations may have been avail able outside the seniority provisions of the CBA. Willis and Gomez summarize the district court's decision as follows: "The District Court ruled that reasonable accommodation under ADA does not require employers to reassign employees in a way that would violate the seniority rights of other employees under a bona fide seniority system."
 
 
 4
 Willis and Gomez also assert that the seniority sys tem is not bona fide, and that the seniority provisions of the CBA were disregarded in the past by the Appellees. We conclude that the CBA contained a bona fide seniority system that was not disregarded in the past by Appellees, and that an accommodation that is contrary to the seniority rights of other employees set forth in a CBA would be unreasonable per se.
 
 
 5
 We also reject their contention that the provisions of the ADA "preempts" the NLRA. We hold that the preemption doctrine applies solely to conflicts between state and federal law.
 
 
 6
 With the above amendments, Judges O'Scannlain and Fernandez vote to deny the petition for rehearing en banc. Judge Alarcon would so recommend.
 
 
 7
 The full court has been advised of the petition for rehearing en banc, and no judge of the court has requested a vote thereon. Fed. R. App. P. 35.
 
 
 8
 The petition for rehearing en banc is denied.
 
 ORDER
 
 9
 On July 6, 1999, we deferred issuance of the mandate in these matters pending determination of the petition for a rehearing en banc in Barnett v. U.S. Air, Inc. , 157 F.3d 744 (9th Cir. 1998) ("Barnett I"). In an order filed on February 1, 2000, this court ordered that Barnett be reheard en banc and that the three-judge panel opinion in Barnett I not be cited as precedent by this court. This court's en banc opinion in Bar-nett v. U.S. Air. Inc., 228 F.3d 1105 (9th Cir. 2000) ("Barnett II") was filed on October 4, 2000.
 
 
 10
 Our opinion contains several references to Barnett I. Because Barnett I cannot be cited as precedent, our opinion in these matters is withdrawn and the clerk is directed to file the attached opinion which deletes all references to Barnett I. The mandate shall issue in these matters 21 days after the entry of judgment or further order of this court.
 
 OPINION
 
 11
 We must consider for the first time whether the Americans with Disabilities Act ("ADA"), 42 U.S.C. SS 12101-12213, requires an employer to violate the seniority provisions of a collective bargaining agreement to accommodate a disabled employee. We affirm because we conclude that such an accommodation would be per se unreasonable where, as here, the collective bargaining agreement contains bona fide seniority provisions.
 
 
 12
 * Appellants David Willis ("Willis") and Paul Gomez ("Gomez") are both longshore workers who worked on the docks in the San Francisco Bay area. They are members of the International Longshore and Warehouse Union ("ILWU").[1] The International Longshore and Warehouse Union, Local 10 ("Local 10") represents longshore workers. The International Longshore and Warehouse Union, Local 34 ("Local 34") represents marine clerks. The ILWU and its local unions are parties to a collective bargaining agreement ("CBA") with the Pacific Maritime Association ("PMA"), an association of the area's main employers of dockworkers. Because the work for each employer is sporadic, the PMA and the ILWU and its locals have established a system through collective bargaining by which the union members report each day for a work assignment to a hiring hall jointly maintained by the unions and the PMA. Work assignments are determined in large part by one's registration status as either a Class A or Class B longshore worker. Class A workers have the greatest senior-ity. They have first priority in being dispatched to jobs. The Class B workers have less seniority than the Class A group. The remaining workers are classified as "casual " workers. They can only receive a work assignment after the job has been offered to and refused by the Class A and Class B workers.
 
 
 13
 Although almost all dock work is very physically demanding, the jobs requiring the least exertion are assigned to Class A workers. In addition, Class A workers who are either over age 55 or disabled may request placement on the Dock Preference Board ("DPB"). Members of the DPB are given priority for light duty work assignments as they come in each day. If additional light duty work is available after all DPB workers have been offered the opportunity, it is offered to Class A and then Class B workers. Approximately five Class B or casual longshore workers, temporarily disabled by pregnancy, have also been offered this work over the past few years, after the DPB workers and Class A workers, but before other Class B workers.
 
 
 14
 At the time this action was initiated, the DPB was limited to approximately 30 workers out of a workforce of 950, because of the reduction in light duty work opportunities. Due to the desirability of light duty work, there is a waiting list for the DPB. It is organized by seniority and contains about 60 to 70 names. Once a worker is on the DPB, however, he or she cannot be "bumped" off the DPB by a worker with greater seniority who subsequently is added to the DPB waiting list.
 
 
 15
 Until 1995, dock preference work remaining, after being offered to all DPB members, was next available to workers who had Dock Preference status in their "gang " (a group of workers dispatched to jobs as a unit). In 1995, the PMA and the unions agreed to disband the gang system. As a result of that agreement and prior agreements governing the gang system, twenty-three former gang members, most of whom were already Dock Preference workers under the gang system, were transferred to the DPB in 1995-96. An additional seven workers were added to the DPB off the DPB waiting list in 1995-96, based on seniority.
 
 
 16
 The DPB, like all work arrangements and rules, is governed by collective bargaining agreements between the unions and the PMA. The joint Labor Relations Committee ("LRC") determines which union members are eligible for the DPB and the DPB waiting list. The LRC consists of at least three union representatives and at least three employer representatives, with an equal vote on each side.
 
 
 17
 The CBA also governs the transfer of longshore workers to Local 34, the marine clerks union. Class A longshore workers with more than five years' seniority may request a transfer toLocal 34. The work responsibilities of a marine clerk require less physical effort. Half of the transferees are selected by the LRC based purely on seniority, while the other half are selected by employers based on merit.
 
 
 18
 Willis became a Class A longshore worker in 1969. He alleged in his complaint that he had received various injuries to his back and neck during his employment. For purposes of this appeal, it is uncontested that he is disabled as defined by the ADA.
 
 
 19
 Willis was placed on the DPB waiting list in 1986, but continued to do other longshore work until injured again in 1992. At that time, he requested placement on the DPB. His request was denied because no additional workers were being assigned to the DPB. In 1994, he again requested placement on the DPB. His request was denied due to his lack of seniority. He was number 35 on the DPB waiting list. He remained on the DPB waiting list until his retirement in 1996.
 
 
 20
 Gomez has been working for the PMA since 1988. He has been a Class A longshore worker since 1993. In 1994, he sustained a leg injury, and was diagnosed with cancer later that year. In October, 1995, his doctor released him for light duty work. He requested a transfer to Local 34 in 1996. Because Gomez did not have five years' seniority as a Class A longshore worker, the LRC denied his request. Gomez also claims he requested placement on the DPB, but was denied.
 
 
 21
 Willis and Gomez filed discrimination charges with the Equal Employment Opportunity Commission (EEOC) and California Department of Fair Employment and Housing (DFEH). Willis and Gomez subsequently filed separate complaints against the PMA and the union defendants in federal court. The two cases were consolidated for trial and assigned to Judge Vaughn Walker. The parties filed cross-motions for summary judgment in March 1997. On August 10, 1997, Judge Walker denied Appellants' motions for summary judgment and granted summary judgment in favor of Appellees.
 
 
 22
 Willis and Gomez appeal from the final order dismissing the consolidated actions after Appellees' motion for summary judgment was granted. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. S 1291.
 
 II
 
 23
 Willis and Gomez contend that the Appellees discriminatedagainst them by failing to make a reasonable accommodation for their disabilities. They argue that "Appellees are required to provide reasonable accommodation for disabled individuals even if such accommodation is contrary to the terms of the collective bargaining agreement." Appellants' opening brief at 14.
 
 
 24
 They do not contend nor have they demonstrated that alternative accommodations may have been available outside the seniority provisions of the CBA. Willis and Gomez summarize the district court's decision as follows: "The District Court ruled that reasonable accommodation under ADA does not require employers to reassign employees in a way that would violate the seniority rights of other employees under a bona fide seniority system."
 
 
 25
 Willis and Gomez also assert that the seniority system is not bona fide, and that the seniority provisions of the CBA were disregarded in the past by the Appellees. We conclude that the CBA contained a bona fide seniority system that was not disregarded in the past by Appellees, and that an accommodation that is contrary to the seniority rights of other employees set forth in a CBA would be unreasonable per se.
 
 
 26
 We also reject their contention that the provisions of the ADA "preempts" the NLRA. We hold that the preemption doctrine applies solely to conflicts between state and federal law.
 
 A.
 
 27
 We review a district court's grant of summary judgment de novo. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998). The Americans with Disabilities Act prohibits an employer from discriminating against a qualified individual with a disability by failing to make "reasonable accommodations to the known physical or mental limitations" of that individual. 42 U.S.C. S 12112(b)(5)(A). The issue before us is whether this provision requires an employer to provide an accommodation to a disabled employee that would directly violate a bona fide seniority system maintained by an employer and a union under the terms of a CBA. We hold that it does not.
 
 
 28
 The ADA protects a disabled person by prohibiting affected employers from "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . .. employee, unless such [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such [employer]." 42 U.S.C.S 12112(b)(5)(A).
 
 
 29
 In addressing the question whether an accommodation that requires an employer to violate a CBA's seniority system is reasonable, we must determine whether the proposed accommodation is unreasonable per se, or whether we should employ a balancing test in which the existence of a seniority system is not conclusive, but is only a factor that must be weighed in deciding whether an accommodation is reasonable. Eight of our sister circuits that have confronted this issue have held that an accommodation that violates a collective bargaining agreement is per se unreasonable. See Davis v. Florida Power & Light Co., 205 F.3d 1301, 1307 (11th Cir. 2000); Feliciano v. Rhode Island, 160 F.3d 780, 787 (1st Cir. 1998); Cassidy v. Detroit Edison Co., 138 F.3d 629, 634 (6th Cir. 1998); Kralik v. Durbin, 130 F.3d 76, 81-83 (3d Cir. 1997); Foreman v. Babcock & Wilcox Co., 117 F.3d 800, 810 (5th Cir. 1997); Eckles v. Consol. Rail Corp. , 94 F.3d 1041, 1051 (7th Cir. 1996); Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1114 (8th Cir. 1995); Milton v. Scrivner, Inc., 53 F.3d 1118, 1125 (10th Cir. 1995).
 
 
 30
 On the other hand, several commentators and one district court have suggested that a bona fide seniority system in a CBA is merely one factor to consider when a court weighs, on a case-by-case basis, whether the proposed accommodation is reasonable (the "balancing approach"). See, e.g., Emrick v. Libbey-Owens-Ford Co., 875 F. Supp. 393, 396-97 (E.D. Tex. 1995) ("[W]hen reassignment of an otherwise qualified employee would conflict with an otherwise valid collective bargaining agreement or seniority system, this conflict shall be weighed by the fact finder in evaluating the reasonableness of such an accommodation under the ADA."); William J. McDevitt, Seniority Systems and the Americans with Disabilities Act: The Fate of "Reasonable Accommodation" After Eckles, 9 St. Thomas L. Rev. 359 (1997); Eric H.J. Stahlhut, Playing the Trump Card: May An Employer Refuse to Reasonably Accommodate Under the ADA by Claiming a Collective Bargaining Obligation?, 9 Lab. Law. 71 (1993); Robert A. Dubault, Note, The ADA and the NLRA: Balancing Individual and Collective Rights, 70 Ind. L.J. 1271 (1995).
 
 
 31
 In Barnett v. U.S. Air, Inc., 228 F.3d 1105 (9th Cir. 2000) (en banc), we declined to adopt a per se rule where a seniority system was unilaterally imposed by an employer. We noted that under such circumstances, "no bargained for rights are involved." Id. at 1119. Unlike the situation in Barnett, the instant matter involves a bargained for seniority system contained in a CBA. Here, the rights of other union members under the National Labor Relations Act ("NLRA"), 29 U.S.C. S 151, et seq., are implicated.
 
 
 32
 We agree with those circuits that have adopted the per se rule. A plain reading of the ADA supports the conclusion that an accommodation that would compel an employer to violate a CBA is unreasonable. Willis and Gomez requestedplacement on the DPB. Gomez also requested a transfer to Local 34. Neither of these requests involves an accommodation to allow them to continue performing their existing duties. Instead, each of them sought a transfer to a position involving permanent light duty work. In making this request, it would appear that Willis and Gomez relied on the ADA's definition of a "reasonable accommodation" as including "reassignment to a vacant position." 42 U.S.C. S 12111(9)(B). However, the positions they requested were not "vacant." The CBA provided that those jobs should be assigned based on seniority. Willis and Gomez could not transfer to these permanent light duty work positions because other employees with greater seniority were eligible for any opening on the DPB before either of them. Similarly, the positions in Local 34 were not "vacant" as to Gomez because other workers who had the requisite five years' seniority were eligible to transfer before him. See Eckles, 94 F.3d at 1047 ("[U]nder a seniority system like that in place at Conrail, few positions are ever truly `vacant,' in the sense of being unfilled . . . . [A] `vacant' position' would essentially be one that an employee could acquire with his seniority and for which he could meet the job requirements.").
 
 
 33
 Willis and Gomez contend that a CBA cannot be used to demonstrate that a proposed accommodation is unreasonable, citing a provision in the ADA which prohibits "participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter(.)" 42 U.S.C. S 12112(b)(2). However, as we have already indicated, the operation of a bona fide seniority system is not discriminatory simply because it does not allow for accommodations which would upset the operation of the seniority system itself.
 
 
 34
 Willis and Gomez assert that Congress did not intend that a CBA be the conclusive factor in determining whether an accommodation is reasonable. We acknowledge that some of the legislative history suggests a balancing approach. For example, the House Report states: "[I]f a collective bargaining agreement reserves certain jobs for employees with a given amount of seniority, it may be considered as a factor in determining whether it is a reasonable accommodation to assign an employee without seniority to the job. However, the agreement would not be determinative on the issue. " H. Rep. No. 101-485, pt. 2, at 63 (1990); see also S. Rep. No. 101116, at 32 (1989) (similar language). However, we, like our sister circuits which have confronted the issue, must also recognize that Congress enacted the ADA fully aware of the "well established precedent" under the Rehabilitation Act which refused to require employers to violate a CBA's bona fide seniority system, and yet failed to include any provision to counter that precedent in the plain language of the ADA. Kralik, 130 F.3d at 82 (quoting Eckles, 94 F.3d at 1048).
 
 
 35
 Sound public policy lends support to the adoption of a per se rule. We believe that a balancing approach would leaveemployers too vulnerable to the possibility of guessing wrong when trying to weigh the relative benefits and burdens on disabled and non-disabled employees. The consequences of guessing wrong are especially burdensome in the context of a collectively bargained seniority system, where the employer and/or union might be subjected to grievances or lawsuits filed by workers who were "bumped," and employers would be vulnerable to charges of unfair labor practices under the NLRA. We are persuaded that it would be improper to subject an employer to the Hobson's choice of violating the ADA or the NLRA, or at least subjecting itself to the threat of litigation under these statutes, depending on the outcome of a "balancing" approach.
 
 
 36
 The per se rule that we adopt today for this circuit is only applicable where there is a direct conflict between the proposed accommodation and the collectively-bargained seniority rights of other employees. We do not decide whether an accommodation is reasonable if the terms of the collective bargaining agreement are flexible enough to permit an accommodation for a less senior disabled person. See Buckingham v. United States, 998 F.2d 735, 741 (9th Cir. 1993) (holding that under the Rehabilitation Act, transfer of a disabled employee would not conflict with the collective bargaining agreement which contained an exception to seniority rules for "the most unusual of circumstances"). Certainly employers and unions are free to bargain for specific language that creates an exception to the seniority system to accommodate employees with disabilities.
 
 
 37
 In addition, our holding is limited to an accommodation request that conflicts with a CBA's bona fide seniority system. Our decision does not preclude an employee from arguing that a proposed accommodation is reasonable despite a conflict with a CBA provision that does not contain a bona fide seniority system. See Eckles, 94 F.3d at 1046 n.9 ("We most certainly do not here decide that all provisions of collective bargaining agreements will preempt a covered entity's duty to reasonably accommodate a disabled employee under the ADA. We address only collectively-bargained seniority systems that establish rights in other employees.").
 
 B.
 
 38
 We turn now to Appellants' contentions that the seniority system was not "bona fide" and that Appellees are estopped from relying upon the seniority system to show that the proposed accommodations are unreasonable. Appellants maintain that Appellees' seniority system cannot be a defense to the charge of a failure to accommodate because it is not bona fide. A "bona fide seniority system" has been defined as "one that was created for legitimate purposes, rather than for the purpose of discrimination." Eckles, 94 F.3d at 1046 n.7. Appellants offered no evidence that the DPB system and the Local 34 transfer provisions were incorporated into the CBAin order to discriminate against the disabled. Appellants have failed to demonstrate that the seniority system is not "bona fide."
 
 
 39
 Appellants also allege that because Appellees have not complied with the seniority system in assigning other workers to jobs, they are estopped from asserting it as a defense to a claim of failure to make a reasonable accommodation. Appellants have failed to articulate sufficient specific evidence of violations of the seniority system to survive a motion for summary judgment. A party opposing summary judgment "may not rest upon the mere allegations or denials of[the pleadings] but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). See also Anderson v. Liberty Lobby Inc, 477 U.S. 242, 252 (1986) (holding that to survive a motion for summary judgment, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").
 
 
 40
 Appellants point to seven specific "facts" or pieces of evidence in support of their contention that the CBA was not followed regarding other employees. We address each of Appellants' assertions seriatim.
 
 
 41
 1) "The former president of Local 10, George Romero, testified that individuals with less seniority than those on the Dock Preference Board Waiting List were placed on the Dock Preference Board, despite the seniority provi sions of the CBA."The cited testimony concerns the fact that pregnant workers were temporarily allowed to do Dock Preference work. Romero did not testify that workers with less seniority than those on the waiting list were actually placed on the DPB.
 
 
 42
 2) "The lists of those on the Waiting List for Dock Preference Board and those on the Dock Prefer ence Board [show] . . . there are a number of individuals on the DPB with less seniority than Willis."
 
 
 43
 There are several possible explanations for the fact that workers with less seniority than Willis appear on the DPB lists. First, once a worker is on the DPB, he or she cannot be displaced if a worker with greater seniority is later put on the DPB waiting list. For example, in 1986, when Willis's name and number first appeared on the waiting list, there were ten workers already on the DPB with less seniority than Willis. He had no right to "bump" those workers. Second, some cur-rent DPB workers were transferred from the gang system, which had a separate Dock Preference eligibility list, when the gang system was disbanded in 1995-96. Thus, these workers might have less seniority than Willis, but were eligible to transfer based on a 1984 agreement between the PMA and the unions governing the dismantling of the gang system.
 
 
 44
 3) "Special arrangements" were made for pregnant workers, "making the women eligible for Dock Preference work despite the fact that there were individuals on the DPB waiting list with more seniority than the pregnant women."
 
 
 45
 Appellees have admitted that over the past few years, approximately five pregnant workers were accommodated for several months by being given light duty work assignments. However, these workers, all of whom were Class B or casual longshore workers, were only allowed to perform remaining Dock Preference jobs after they had been offered to all available DPB members, and to all available Class A workers, including Appellants. Appellants have failed to demonstrate that the pregnant workers were placed on the DPB. We note also that the accommodation to the pregnant workers was made only on a temporary basis. Appellants requested permanent accommodations.
 
 
 46
 4) "PMA's Jack Suite testified that despite these requirements for placement, a number of indi viduals were assigned to Dock Preference with out having to present such medical reports [to the Joint LRC]."
 
 
 47
 Mr. Suite testified that an individual could be placed on the DPB waiting list if he could show either that he was older than 55 or that he was disabled. Thus, only those workers claiming to be disabled would need medical certification. Appellees did not violate the seniority system by not requiring such proof from individuals over age 55.
 
 
 48
 5) "Gomez' attempts to transfer into Local 34 as a marine clerk were futile according to the union because he did not have five years seniority. Yet, the President of Local 34, Frank Belleci, testified that one half of the marine clerk posi tions were filled based on seniority whereas the other half were not."
 
 
 49
 In order to be considered for a transfer to Local 34, a longshore worker must have five years' seniority as a Class Aworker. From this pool of workers, all of whom have the required five years, half are selected based purely on seniority, while the other half are chosen by the employers based on merit. Because he lacked the minimum five years' seniority, Gomez could not be considered for a transfer. Gomez admitted in an answer to an interrogatory that a transfer required five years' seniority, and that he knew of no marine clerk position filled since 1990 by someone lacking the five years' seniority.
 
 
 50
 6) "Individuals with less seniority than Willis . . . by-passed the waiting list and were moved to the Board. Specifically, D. Dolan appears as number 68 on the 1995 waiting list whereas Willis is 38. D. Dolan subsequently moved to the DPB."
 
 
 51
 D. Dolan is one of two individuals identified by Appellees who had less seniority than Appellant Willis, was not disabled, was transferred to the DPB after 1990, and was not Dock Preference eligible under the gang system. However, he was a member of the gang system who at the time of transfer was over 55 and thus qualified for placement on the DPB under the terms of the 1984 agreement between the PMA and the unions.
 
 
 52
 7) "At oral argument on the Motion for Summary Judgment, Appellants would have introduced additional evidence of individuals with less seniority being moved to the Dock Preference Board."[2]
 
 
 53
 The appellate court is limited to evidence in the record. Lippi v. City Bank, 955 F.2d 599, 604 (9th Cir. 1992). As Appellants do not specify who these individuals were or where in the record support can be found for this assertion, they do not raise a genuine issue of material fact regarding this contention.
 
 
 54
 Appellants have failed to demonstrate that a genuine issue of material fact exists as to whether Appellees deviated from the seniority system in assigning work to other employees and in making transfers to the DPB and Local 34. Thus, because the accommodations Willis and Gomez requested conflicted with a bona fide seniority system that has been consistently followed, they are per se unreasonable.
 
 C.
 
 55
 Finally, Appellants argue that their ADA claim "preempts" the provisions of a CBA entered into under the authority of the NLRA. A preemption analysis is simply inapplicable where the conflict is between two federal statutes, such as the ADA and the NLRA, rather than between a federal and a state law. See Smith v. Nat'l Steel & Shipbuilding Co., 125 F.3d 751, 757 (9th Cir. 1997), cert. denied, 523 U.S. 1094 (1998).
 
 
 56
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 At oral argument, counsel for Appellees explained that the union's name has been changed from International Longshoremen's & Warehousemen's Union to International Longshore and Warehouse Union.
 
 
 [2]
 The district court decided the motion without conducting a hearing. A district court judge has the discretion, when considering a motion for summary judgment, to determine whether or not to hold an oral hearing. See Fed. R. Civ. P. 78.