**Melvin BONNER, Plaintiff,**

v.

**NEW YORK STATE ELECTRIC & GAS CORPORATION, Defendant.**

**Leslie Maynard, Plaintiff,**

v.

**New York State Electric & Gas Corporation, Defendant.**

**Nos. 00–CV–6101L, 00–CV–6118L.**

United States District Court, W.D. New York.

March 28, 2002.

Theodore S. Kantor, Bilgore, Reich, Levine, Kroll & Kantor, Rochester, NY, for Plaintiff.

James S. Gleason, Hinman, Howard & Kattell, LLP, Binghamton, NY, for Defendant.

*DECISION AND ORDER*

LARIMER, Chief Judge.

The plaintiffs, Leslie Maynard ("Maynard") and Melvin Bonner ("Bonner"), were both employed by New York State Electric & Gas ("NYSEG") as first-class gas fitters. Both suffered work-related injuries, which permanently partially disabled them. After their injuries, both men retained, for a time, their classification as first-class gas fitters, and worked full time, but they performed only light-duty assignments. When, according to NYSEG, such light work was no longer available, both men were placed on disability leave because they could not perform all their required functions as first-class gas fitters. Maynard retired, effective January 1, 2000, apparently because his disability benefits had been exhausted. Bonner, who has not worked since June 1999, is currently receiving disability benefits from NYSEG.

Because of NYSEG's refusal to carry both men as first-class gas fitters, they filed complaints alleging violations of the Americans with Disabilities Act, ("ADA" or "the Act"), 42 U.S.C. § 12101 *et seq.* Presently pending before this Court are defendant's motions for summary judgment. Because I find that neither plaintiff is capable of performing the essential functions of the desired job—first-class gas fitter—their claims under the ADA fail, and summary judgment is, therefore, granted in favor of the defendant.

## BACKGROUND

### Leslie Maynard

Maynard was first employed by NYSEG in June 1975, and became a first-class gas fitter in 1987. He was injured on June 25, 1996, and ultimately suffered a 40 or 45 percent loss of the use of his right hand and a 25 percent loss in his right knee. Maynard was cleared by his doctors to return to work in February 1997, but on a very restricted basis.

For example, Dr. Frederick Kaempffe indicated that Maynard was to be on light-duty status, with "no lifting, pushing, or pulling with his right upper extremity." Ilacqua Aff., Ex. D. After an examination conducted at the request of NYSEG's workers compensation carrier, Dr. Martin Korn noted that Maynard should not "kneel, do stairs, squat, or do other than alternate standing and sitting as comfort requires." *Id.* at Ex. E, p. 3. He also noted that Maynard "should avoid lifting more than five pounds as well as avoiding heavy pushing and pulling, and should not use hand tools." *Id.*

On January 30, 1998, Maynard was examined by Dr. Robert Dickerson on behalf of NYSEG. Dr. Dickerson concluded that Maynard had a "moderate degree of partial disability with his right wrist and a mild degree of partial disability with his right knee." Ilacqua Aff., Ex. I, p. 3. He determined that Maynard had "reached maximum medical improvement with both his right wrist and right knee," and noted that his current work restrictions were still necessary. *Id.* After reviewing the first-class gas fitter job description, he found that Maynard was "not able to do that job without restrictions at the present time." *Id.* For the remainder of his tenure at NYSEG, Maynard's work duties were restricted. *See Id.* at Aff., Exs. J, K. M, N.

### Melvin Bonner

Bonner began his employment with NYSEG in 1965, and he became a first-class gas fitter in 1976. On September 30, 1990, Bonner was injured on the job.

Bonner underwent arthroscopic surgery in 1991, and again in 1992. Following his second surgery, his surgeon, Dr. Charles Jordan, indicated that Bonner should be

restricted to light-duty assignments, which do not involve "excessive standing, excessive walking, excessive pole and/or structure climbing, excessive stair climbing, prolonged physical exertion, lifting or excessive bending, and driving." Ditzel Aff., Ex. E. Dr. Jordan also indicated that Bonner was limited to sedentary activity until further notice. *Id.* In 1993, Dr. Lucien Rouse recommended that plaintiff's "light-duty status be a permanent restriction." Ditzel Aff., Ex. G, p. 2.

Bonner continued to experience problems with his knee, and in June of 1999, he underwent another arthroscopic procedure. Following this surgery, Bonner's doctor permitted him to return to work in September of 1999. Bonner was not permitted to kneel, stand for extended periods, climb stairs, or drive or sit without breaks. Ditzel Aff., Ex. P. Bonner is still subject to the same work restrictions. In addition, his current medication sometimes causes dizziness or drowsiness. Defendant's Statement of Material Facts, ¶ 15 (undisputed by plaintiff).

## DISCUSSION

A motion for summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is the moving party's burden to demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "When the moving party has carried its burden," the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574,

586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Id.* at 587 (emphasis in original) (quoting Fed. R.Civ.P. 56(e)).

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* at 12111(8).

A reasonable accommodation may include: "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B).

### A. Essential Functions of a First–Class Gas Fitter

In general, the essential functions of a job are "the 'fundamental' duties of the position in question, but not functions that are merely 'marginal.'" *Mitchell v. Washingtonville Cent. School Dist.,* 190 F.3d 1, 8 (2d Cir.1999) (citing 29 C.F.R. § 1630.2(n)(1)). "Evidence of whether a particular function is essential" may include "written job descriptions" and "[t]he terms of a collective bargaining agreement." 29 C.F.R. § 1630.2(n)(3)(ii) & (v).

The collective bargaining agreement between NYSEG and its employees outlines the duties and responsibilities of a first-class gas fitter. The agreement summarizes the essential functions of the job.

Duties: under general supervision performs all kinds of repairs and construction work on gas mains and services, and services, maintains, and places in operation all types of domestic, commercial and industrial gas appliances, equipment and incidental piping or wiring used in connection therewith.

*Typical Duties:*

1. Tapping, penetration, stopping, leak repairing and clearing of energized lines.
2. Purging and energizing of gas mains, services, regulating, metering and other system equipment.
3. Maintaining, operating and repairing regulating, odorizing, filtering and related equipment.
4. Acting as inspector for main and service installations.
5. Fabrication and sketching of piping tie-ins and simple gas service replacements in the field. Correction of sketches necessitated by field conditions.
6. Directs the work of one other Fitter 1/C or lower grade directly assisting him; may also direct others performing such duties as equipment operation, digging and directing traffic.
7. May be required to cut services on or off and remove and set gas and electric meters.
8. May perform duties of Equipment Driver/Operators at or below his wage level.
9. Performs other related or less skilled work as directed.

Ilacqua Aff., Ex. A; Ditzel Aff., Ex. A.

Plaintiffs have made several important concessions in this case. First of all, plaintiffs do not dispute that the functions described above are "essential." There is no suggestion that these activities are "marginal" duties. Furthermore, both plaintiffs concede that they are now, and have been for some time, unable to perform all of the functions and duties of a first-class gas fitter.

It is uncontested that both men are unable to perform *most* of the essential duties listed in the job description. Specifically, Maynard concedes in his Statement of Material Facts, ¶ 13, that he is unable to perform duty one (tapping, penetration, stopping, leak repairing and clearing of energized lines), duty two (purging and energizing of gas mains, services, regulating, metering and other system equipment), duty three (maintaining, operating and repairing regulating, odorizing, filtering and related equipment), duty seven (may be required to cut services on or off and remove and set gas and electric meters), and duty eight (may perform duties of Equipment Driver/Operators at or below his wage to level).

Furthermore, Maynard concedes that he is no longer able to respond to customer calls; install, service, or repair customer service gas lines or gas mains; operate equipment such as a backhoe, hog, or tapping equipment; break pavement; patrol lines; and drive posts for meters. He is able to locate underground facilities, as long as he does not have to enter customers' basements. Defendant's Statement of Material Facts, ¶ 12 (undisputed by plaintiff).

Although Maynard concedes that he is now unable to perform most of his prior duties, he claims that he is still able to complete some of the duties required of a first-class gas fitter. Maynard notes that he can still inspect gas main and service installations, make sketches of taping tie-

ins, make simple gas replacements in the field, direct the work of other pipe fitters, and perform paperwork. Maynard Aff., ¶ 6. He also contends that until May of 1999, the defendant provided him with work consistent with his limitations. This work included "mapping, paper work, teaching apprentices, inspections, sniff runs, and other details which have not required me to stand for extended periods of time, to climb stairs, to kneel, to crouch, to squat, and to perform certain other physical labor." *Id.* ¶ 9. Maynard's supervisor, Philip Ilacqua, testified that Maynard was able to perform some clerical duties, light repair work on hand tools, including refurbishing and painting, and "[s]ome visual checking of completed jobs for restoration to make[ ] sure that was done." Ilacqua Deposition, p. 7.

Bonner is also unable to perform many of the typical duties outlined in the collective bargaining agreement. For example, Bonner is no longer able to perform simple gas service replacements in the field, nor is he able to perform typical duty one (tapping, penetration, stopping, leak repairing and clearing of energized lines), duty two (purging and energizing of gas mains, services, regulating, metering and other system equipment), duty six (direct the work of one other Fitter 1/C or lower grade directly assisting him; may also direct others performing such duties as equipment operation, digging and directing traffic) duty seven (cut services on or off and remove and set gas and electric meters) and duty eight (perform duties of Equipment Driver/Operators at or below his wage level). Defendant's Statement of Material Facts ¶ 13 (undisputed by plaintiff).

Bonner concedes that, following his injury, he can no longer install new gas service; perform the walking, climbing, kneeling, or bending associated with the customer service aspects of his job; or work on the tapping crew. Defendant's Statement of Material Facts, ¶ 8–12 (undisputed by plaintiff). Nor can he operate a backhoe, do any flagging, gas main and gas service repair or installations, or line patrol. Defendant's Statement of Material Facts, ¶ 13 (undisputed by plaintiff).

Bonner contends that, consistent with his limitations, he can perform mapping work and paperwork, assist with computer-aided design work, do New York Public Service Commission mandated surveys and "other jobs and duties not associated with manual or physical labor." Bonner Aff., ¶ 9.

### B. Reasonable Accommodation

 In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001). Where a plaintiff seeks reassignment to a vacant position, he must establish:

"(1) that he is an individual who has a disability within the meaning of the [ADA], (2) that an employer covered by the statute had notice of his disability, (3) that with reasonable accommodation, he could perform the essential functions of the position sought, and (4) that the employer has refused to make such accommodations."

*Stone v. City of Mt. Vernon*, 118 F.3d 92, 96–97 (2d Cir.1997); *see also Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 216 (2d Cir.2001). For purposes of its motions for summary judgment, the defen-

dant does not dispute that plaintiffs are individuals with disabilities under the ADA.

■ The crux of plaintiffs' claim is that NYSEG must "reasonably accommodate" them by continuing to provide plaintiffs with only light-duty work within the job classification of first-class gas fitter.

■ It is undisputed that NYSEG provided both employees with a smattering of light-duty assignments, which essentially kept both men occupied on a full-time basis. NYSEG contends that this work is no longer available, and therefore, it cannot continue to carry these two employees who cannot perform all the essential functions of a first-class gas fitter. Essentially, plaintiffs request this Court to compel NYSEG to create a new position—*light-duty, first-class gas fitter*. In my view, the ADA does not require this. Employers need not create a new job in order to accommodate a disabled employee. *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 99 (2d Cir.1999); *see also Willis v. Pacific Maritime Ass'n*, 162 F.3d 561, 567 (9th Cir.1998); *Smith v. Ameritech*, 129 F.3d 857, 867 (6th Cir.1997); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996); *Felix v. New York City Transit Authority*, 154 F.Supp.2d 640, 655 (S.D.N.Y.2001); *Needle v. Alling & Cory, Inc.*, 88 F.Supp.2d 100, 107 (W.D.N.Y. 2000). Plaintiffs persist in their contention that NYSEG must continue to provide them with this light-duty work as first-class gas fitters, even though the essential functions of the position require significant manual labor which plaintiffs are unable to perform. Neither plaintiff has sufficiently countered NYSEG's assertion that the light-duty tasks that they marshaled or created for plaintiffs remain in existence.

This is not a case where reassignment to a vacant position might constitute an acceptable accommodation. *See* 42 U.S.C. § 12111(9). First of all, neither plaintiff has identified a vacant position for which they are otherwise qualified. *See Jackan v. New York State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir.2000) (It is the plaintiff's burden to establish that a vacancy exists to which he could be transferred.). In the past, it appears that both plaintiffs did attempt to qualify for other positions, but their medical infirmities prevented them from fulfilling the essential requirements of those jobs. Furthermore, as matters now stand, neither plaintiff is now requesting any reassignment to a different position. Instead, both plaintiffs contend that NYSEG should be required to continue to fashion light-duty assignments in the job category of first-class gas fitter. Of course, this means that plaintiffs seek to receive compensation for what appears to be a higher level job classification, though they concede their inability to perform most of the essential functions of that job. Essentially, plaintiffs request that this Court direct NYSEG to gather all the light-duty functions performed by first-class gas fitters and assign them to plaintiffs. I do not believe the ADA requires such a redistribution and reclassification of jobs.

Although both Maynard and Bonner did perform some light work, such as gas mapping duties, clerical work, inspecting and refurbishing gas and electric tools, NYSEG has submitted affidavits that a sufficient volume of that work is no longer available. NYSEG needs first-class gas fitters who are able to perform all the jobs essential functions, and it is not obligated to find meaningful work consistent with the disabilities of both plaintiffs. Other than plaintiffs' conclusory statements that light-duty work *must* be available, *see e.g.*, Maynard Aff., ¶ 17, Bonner Aff., ¶ 13, plaintiffs have failed to demonstrate that

sufficient light-duty work exists to provide them with full-time employment.

Both plaintiffs argue that the Second Circuit's decision in *Stone v. City of Mt. Vernon,* 118 F.3d 92 (2d Cir.1997) must direct this Court's decision here. In *Stone,* the court held that a requirement that any firefighter who held a light-duty position must be able to, in an emergency, fight fires, did not constitute an essential function of the light-duty position. As such, assigning a disabled employee to one of these positions may be a reasonable accommodation. *Stone* is inapposite here for several reasons. First, the plaintiff in *Stone* sought a separate light-duty position already in existence; here plaintiffs seek to create a light-duty position from a job with a non-light-duty classification. Second, *Stone* addressed the fact-intensive question of whether a particular job function can be considered "essential." In this case, plaintiffs do not dispute that the physical requirements of the first-class gas fitter position are, in fact, essential functions of that job.

■ It is the plaintiffs' burden to identify a reasonable accommodation, "the costs of which, facially do not exceed its benefits." *Kennedy v. Dresser Rand Co.,* 193 F.3d 120, 122 (2d Cir.1999). Although " 'reasonable accommodation' may include such adjustments as modification of physical facilities, work schedules, or equipment, *see* 45 C.F.R. § 84.12(b), 'reasonable accommodation' does not mean elimination of any of the job's essential functions." *Gilbert v. Frank,* 949 F.2d 637, 642 (2d Cir.1991); *see also Wernick v. Federal Reserve Bank of New York,* 91 F.3d 379, 384 (2d Cir.1996). Plaintiffs have utterly failed to identify a permissible reasonable accommodation which would allow them to perform the essential functions of their jobs. Nor have they sought or even identified any other available vacant positions for which they are otherwise qualified. As such, defendant's motions for summary judgment are granted.

## CONCLUSION

Defendant's motion for summary judgment (Dkt# 9) regarding plaintiff Leslie Maynard (00–CV–6118) is hereby granted, and the complaint is dismissed. Defendant's motion for summary judgment (Dkt # 7) regarding plaintiff Melvin Bonner (00–CV–6101) is hereby granted, and the complaint is dismissed.

IT IS SO ORDERED.